# WHEELING.

1873.
June Term.

CLEGGETT VS. KITTLE ET AL.

THOMAS JOHN CLEGGETT, PLAINTIFF AND APPEL-
LANT, *against* NESTER H. KITTLE AND SAMUEL
WOODS, DEFENDANTS AND APPELLEES.

Decided July 15th, 1873.

## SYLLABUS.

1. When a cause is regularly heard without objection on bill and ans-
wer without any replication, the answer will generally be taken
as true.

2. K. procured the surveyor of Barbour county to enter and survey
for him, as waste and unappropriated land in said county, two par-
cels of land containing 85 and 187 acres respectively, which were
lodged with the register of the land office at Richmond, Virginia;
and thereupon C. and others, before patents issued upon said surveys
filed caveats against the issuing of grants to K, upon his surveys, upon
ground that the whole or some part of one or both of K's. surveys
was within the true boundaries of a larger tract patented to one
Rev. C. K., on the 14th day of November 1856, by writing under

1873.
June Term.

seal, assigned to W. all his right, title and interest in and to the survey of land of 85 acres, and his interest in and to the survey of land containing 187 acres.

This writing was acknowledged before a justice of the county of B., in which the lands were situated, on the day of its date, and duly admitted to record by virtue of the said acknowledgement on the 17th of November 1856. W. for a consideration hereafter expressed, became willing to relinquish to C. so much of one or both of said small surveys as was contained within the boundaries of the larger tract as then claimed by C., in compromising the caveat suits with C. And in consideration thereof, and for the purpose of settling the said caveats, and quieting the title of C. to the larger tract it was agreed between C. and W., that the caveats should be dismissed, each party thereto to pay his own costs therein, W. to assign both of said smaller surveys to C., so that grants might issue thereon in the name of C., and C. to pay W. for said assignments, the sum of $200, which might be paid in due cash bonds on solvent men in the county of B. on or before the 10th of October 1857, and also in *addition* to said $200 to be paid to W. by C. as aforesaid, C. further agreed to convey to W., by deed, so soon as said grants should issue, so much of one or both of said surveys of 85 and 187 acres as should be found to lie outside of the said larger tract as then claimed by C., all of which was agreed and consented by W. and C. by a writing under their seals dated 15th day of May 1857. Afterwards, on the 22nd day of October 1857, W., by a writing under seal, and attested by two witnesses, but never recorded, assigned said two smaller surveys to C., as the writing states, for value received. Sometime afterwards C. filed his bill in the Circuit Court of Barbour county against W., K. and D., in which he alleged among other things that K. had entered and caused to be surveyed the said two smaller tracts of land, about the year 1853, and that they were within the boundaries of said larger tracts, and that said caveats had been filed as aforesaid, and that W. had an interest in said entries and surveys, and to save costs, for value received, assigned said surveys which had been caveated by C. to C., so that grants might issue thereon to C. That the caveats were dismissed upon conditions that grants were to issue in the name of C., and for his benefit, and that the clerk of the court of B. Co., was not to send to the Register of the land office copies of the dismission of the caveats, and that grants were to issue in the name of C. under the instructions of W. But that to the surprise of C., he had learned that grants issued in the name of K. or W. or both, and that they or one of them claim the land embraced therein, and had sold their right under said patents to D. C. in his bill does not describe said contract in writing between him and W., but charges that the attempt of W. and K., or either

1873.
June Term.

of them, to hold the land is a fraud upon him, and prays that said lands be conveyed to him &c. W. answers the bill, in which he sets up the said contract of compromise between him and C., and avers that the 187 acre tract is not within the true boundaries of the larger tract, but is within the boundary thereof as claimed by C. at the date of said contract, and he also avers and alleges that 85 acre tract is not within the boundary of the larger tract nor within the boundary thereof as claimed by C. at the date of said contract, and he also claims that no part of the $200 and its interest, aforesaid, has been paid to him, and asks that payment thereof be enforced. He also denies the material allegations of the bill not recited in effect in said contract, except he admits the assignment. K. also answers the bill; says he is willing that the two tracts of 85 and 187 acres may be conveyed as the court shall direct, and the cause was heard on bill and answers without any replication. HELD.

That it was not error in the court below to declare the said $200 with its legal interest a lien on the 187 acre tract, and that under the language of the said contract C. was not entitled to an abatement of the $200, because the 85 acre tract was not embraced within the said larger tract in fact or as claimed by C. HELD also,

That it was not error, under the circumstances, in the court below in directing a commissioner to convey the legal title to the 187 acres to C., to also direct that a lien on the same should be reserved for the payment of said $200 and its interest, which in the agregate amounted to $———

The case is stated in the opinion of the Court.

*Brown,* for Appellant.

HAYMOND, President.

Plaintiff alleges in his bill that the heirs and devisees of Bishop Cleggett owned about 1100 acres of land on Big Sandy creek, in the county of Barbour, a large portion of which was wild and uncultivated, but unusually fertile and valuable. That one Nester H. Kittle made two entries and surveys upon said land, one of 85 acres, and another of 187 acres, adjoining lands belonging to Henry Keiser and John Dolten, which surveys and entries were made about the year 1853. That Plaintiff being one of the heirs of said 1100 acres, and as well the attorney to sell the same, entered *caveats* to prevent

patents issuing on said surveys, which *caveats* were filed in the Circuit Court of the county of Barbour. That Samuel Woods had an interest in the entries and surveys, and he had but little hope of success in defeating the *caveats*, and to save costs, on the 22nd of October 1857, for value received, assigned to Plaintiff the surveys so caveated, so that grants for the same might issue thereon in the name of Plaintiff; which entries and surveys had been and were assigned by Kittle to Woods on the 14th day of November 1856, and the assignment was duly acknowledged, and of record in the county of Barbour Plaintiff in his bill says that the agreement and assign-. ments are filed therewith, and they are asked to be taken as part thereof. The bill further alleges that the *caveats* were dismissed, upon conditions, as Plaintiff understood, that grants were not to issue, and if issued they were to issue in his name, and for his benefit. That the clerk of the Court was not to send to the register of the land office in Richmond a copy of the orders of dismission of the *caveats*, and that grants were to issue in the name of Plaintiff, and for his use, by the instruction of Woods. But that Plaintiff, to his surprise, has learned that grants have issued in the name of Kittle or Woods or both, and that they, or one of them, now claim the land, and have sold the same, by virtue of their right to sell under the grants, to Jeremiah L. Denison. That whatever shadow of title the grants confer in law, in equity, belongs to Plaintiff. The Plaintiff failed to file the agrement mentioned in his bill, with the papers of the cause. Woods and Kittle filed their separate answers to the bill, to which no replications were ever filed by Plaintiff. Woods in his answer says, in substance, that he admits that Kittle made and surveyed the entries for the 85 and 187 acres of land, and that to prevent the issuing of grants thereon the Complainant with others claiming title to the 1,100 acres, known as the Clegget land, filed in the office of the register of lands two *caveats* against Kittle, which were returned, and tried in the Circuit

Court of Barbour county, and that the *caveats* were dismissed. He admits that before the *caveats* were dismissed, he became the owner of the surveys, having purchased the same from Kittle, and taken from him an assignment thereof on the 14th of November 1856, duly acknowledged and recorded, as stated in the bill. That the assignment is the same filed by Plaintiff. He admits that he assigned to Plaintiff the entries and surveys, and endorsed the assignment on the assignment from Kittle which was attested by two witnesses, as required by law, so that the same, when lodged in the office of the register of lands in Virginia, would authorize the grants to issue to Plaintiff as his assignee. That the assignment was delivered to Plaintiff at the time of its execution, and he (Plaintiff) retained it, and never filed it in the land office. That very soon after the assignment by him, Plaintiff dismissed the *caveats*, and the clerk of the Circuit Court, as he was in duty bound to do, forwarded to the land office the orders, and judgments dismissing the *caveats*. That Plaintiff having neglected to lodge his assignment of the surveys in the land office, grants, of course, issued to Kittle, who had then left the state and never returned. He (Woods) also says that the grants are in his custody, but that he does not now, and never has claimed the lands or any part thereof. That he has never had possession of any kind of either of the surveys, and that the allegations of the bill alleging the contrary are untrue. That Plaintiff by his tenants and vendees, has had exclusive control of the lands since the assignment, and he, Woods, has not sold any portion of the lands to Denison. That he assigned the surveys of 85 and 187 acres to the Plaintiff in consideration of covenants made by Plaintiff with him, a short time before, whereby he promised and obliged himself to pay to him (Woods) therefor two hundred dollars, with interest from the 10th of October 1857, no part of which has ever been paid. That this amount is justly due to him, and he is entitled to a decree in the cause for

1873.
June Term.

Clegget
v.
Kittle et al.

that sum with interest and his costs. He also says he denies that any part, or either, of the surveys lie within the true boundaries of the 1,100 acres owned by Plaintiff. He alleges, that at the time of making the covenant, the complainant insisted, and still insists that they (the surveys) did lie within the boundaries of the 1,100 acres, but that in the covenant, the Plaintiff, in consideration that he would accept the $200 for both surveys, bound himself to reconvey to him so much of one or both of the surveys as does not lie within the 1,100 acre tract as claimed by Plaintiff. That no part of the 85 acre tract lies within the boundaries as claimed by Plaintiff. That by the covenant the Plaintiff is bound to reconvey to him the 85 acres; and he prays that he may be compelled to pay the $200 with interest, and to convey to him the 85 acres. Kittle in his answer admits his assignment to Woods. He denies that any part, or both, of the surveys lie within the true boundaries of the 1,100 acre tract; but that both of the surveys lie outside of the same. He says that the patents did not issue in his name by his procurement, but on account of Plaintiff's neglect. That he does not claim the surveys, and is willing that a commissioner be appointed to convey the legal title.

The assignment to Woods is not attested by two witnesses, though it was acknowledged before a justice and admitted to record. The assignment of Woods to Plaintiff, though attested by two witnesses, was never otherwise acknowledged, and was never admitted to record. The agreement or covenant named in the answer of Woods is filed, and is dated the 15th day of May 1857, and is a sealed instrument. The agreement is substantially as stated in the answer of Woods, except the Clegget tract is described as containing 2,010 acres, instead of 1,100. In the agreement, among other things, it is stipulated that ; "In consideration of the premises, and for the sole purpose of settling the said *caveats*, and forever quieting

the title of said Thomas John Clegget, &c., to said 2,010 acres, as claimed by them, it is agreed between the said Thomas John Clegget and Samuel Woods as follows, viz: Both of said *caveats* shall be dismissed, neither party claiming costs against the other; said Woods shall assign both of said surveys to said Thomas John Cleggct, so that grants may issue thereon in the name of said Clegget; said Clegget shall pay said Woods for said assignment the sum of two hundred dollars, which may be paid in due cash bonds on solvent men in Barbour county, duly assigned to said Woods, on or before the 10th of October 1857. In addition to said sum of two hundred dollars, to be paid as aforesaid, said Thomas John Cleggett further agrees to convey by deed to said Woods, so soon as said grants issue, so much of one or both of said surveys of 85 and 187 acres, as shall be found to lie outside of the boundaries of said 2,010 acre tract, as at present claimed by said Clegget as aforesaid." By provision of this agreement, Plaintiff was to pay Woods $200 in cash, and to convey to him so much of the 85 and 187 acre tracts as was without the larger boundary. This may have been an imprudent contract for Plaintiff to make, but no good reason is alleged to show why he should not be compelled to abide by and perform it. It is not for us to make a contract for the parties, such as we might think ought to have been made under the circumstances. Parties must abide by, and be held to their contracts, unless some good and sufficient reason is shown why relief should be granted against them. As before remarked the Plaintiff filed no replication to either answer. Woods filed his answer at the August term 1869 of the Court. At the April term 1870, the cause was heard, without objection, upon the bill, answers of Woods and Kittle, exhibits and argument of counsel. And the Court ascertained by its decree that no part of the 85 acre tract lies within the boundaries of the 2,010, or rather 1,100 acres, as it is alled in the bill, granted to Reverend Thomas John

Clegget, and that no part of the 85 acres lies within the 1,100 acres as agreed between the Plaintiff and Woods and specified in the contract between them referred to and filed by Woods with his answer, and that therefore, the Plaintiff is not entitled to a conveyance of the legal title thereto from Kittle, but that Woods is entiled to receive from Kittle a conveyance therefor. The Court also decreed that Plaintiff, under the contract with Woods, was entitled to have a deed with covenants of special warranty from Kittle, conveying to him the legal title to the 187 acre tract, subject to the payment to Woods of $200, with interest from the 10th day of October, 1857, the purchase money agreed to be paid therefor. The Court also ascertained, by its decree, that the agreement and transfer in the bill mentioned, made by Kittle to Woods on the 14th of November 1856, and by Woods to Plaintiff, on the 22nd day of October 1857, vests in the Plaintiff only an equitable title to the 187 acres, and that the same is therefore subject to the vendor's lien in favor of Woods, for the sum of $200, with interest as aforesaid, which amounts, principal and interest, to $350.33⅓ cents, which should bear interest from date of the decree. The Court, in the same decree, appointed Benjamin F. Martin a special commissioner to make to Woods, for and on behalf of Kittle, a deed with covenants of special warranty, for the 85 acres, and also a deed to Plaintiff, with covenants of special warranty, retaining thereon a lien for the $350.33⅓ cents with interest, the purchase money due Woods, &c., and directed Martin, if the purchase money was not paid &c., to sell the 187 acres for the same, and the costs of suit, upon a credit &c.

The following errors are assigned by Plaintiff's counsel as being sufficient to reverse the decree, viz:

There was no proof that the 85 acres were outside of the other survey. The court ought to have had that fact verified by actual survey or otherwise.

2. There was no lien, except what the court gave, on the lands or any part of them to pay the $200. The consideration was a compromise of a doubtful claim of title, and the title should have been decreed without the incumbrance of a lien.

3. Assuming that land was the consideration of the debt, it was at most a claim of title, not a title. If anything passed or appeared to pass by the contract it was at most a doubtful equity—not a title, because if not in the survey of 1,100 acres, or 2,010 acres, it passed nothing, and if in it, it passed nothing, as the title was already in Clegget to that survey.

4. As the title to the 85 acre tract was repudiated by the court, the sum of $200 should have been ratably abated, for if it was not so, and both tracts were outside of the large survey, Woods would get the lands and the compromise money too, which is not consistent with the idea that there was a lien on the land.

The cause was heard upon the bill and answers without replication. It is provided by the 35th and 36th secs. of Chap. 125 of the Code that, "The defendant in a suit in equity may, in his answer, allege any new matter constituting a claim for affirmative relief in such suit, in the same manner and with like effect as if the same had been alleged in a cross bill filed by him therein; and in such case, if the plaintiff desire to controvert the relief prayed for in the answer, he shall file a a reply in writing, denying such allegations of the said answer as he does not admit to be true, and stating any facts constituting a defence thereto. Every material allegation of the bill not controverted by an answer, and every material allegation of new matter in the answer constituting a claim for affirmative relief, not controverted by a reply, shall, for the purposes of the suit, be taken as true, and no proof thereof shall be required." Under these provisions of the Code, and the practice in chancery, all the material allegations of the answer of Woods must be taken as true, in the absence of any replication. Woods

in his answer denies that the 85 acres, or any part thereof, is within the large survey, or even within the boundaries thereof as claimed by Plaintiff, and he also avers that it is not. In the absence of a replication, and taking the answers as true, there being no depositions in the cause, the first error assigned must be overruled.

The assignment of Kittle to Woods is not an assignment of the certificates of survey, but only an assignment of the interest of Kittle in the surveys. The assignment of Kittle to Woods vested in Woods the equitable right to demand and receive from Kittle the legal title when patents issued upon the entries and surveys. The same remarks apply to the assignment from Woods to Plaintiff, except that Plaintiff's right to demand and receive the legal title when patents issued, is subject to the provisions of his agreement with Woods. As Plaintiff never paid the $200 of purchase money to Woods, and Kittle not having conveyed the legal title to Woods or Plaintiff, nor Woods to Plaintiff, Woods may properly assert a lien against the 187 acres in this suit. Plaintiff in his bill says the assignment to Woods was made to him for valuable consideration, thereby in effect alleging that he had paid to Woods the purchase money. This allegation is denied by the answer, and the answer alleges that the whole of the $200 of purchase money with its interest is unpaid. The agreement of Plaintiff and Woods shows the amount of the purchase money, and so does the answer of Woods which is taken as true. See the doctrine as to purchase money liens, when the legal title is not conveyed by deed to the purchaser, fully discussed in the opinion of the Court of Appeals of Virginia, in the case of Yancey vs. Mauck, et als, 15 Gratt., 300. We think the principles held in that case as to liens are correct in cases to which they are applicable, and that some of them are applicable to this case, and tend to support the decree made by the Court below as to the lien for $200, &c.

Assuming that the 187 acres of land are not within the true boundaries of the larger tract in the bill mentioned, as averred in the answers, but within the boundaries of the same as claimed by Plaintiff, the Kittle title was more than a mere claim of title. For aught we can see in this case it was a good equitable title at least at the date of the agreement, and by the patent became a legal title. It is clearly to be implied from the agreement between Plaintiff and Woods, that they each contemplated, at the execution of the agreement, that some part of one or both of the small surveys was not or might not be embraced within the boundaries of the larger tract as then claimed by Plaintiff, or else why provide in such contingency for a conveyance to Woods of such part or parts. The third assignment of error is therefore not well founded.

What we have already said in another place as to the payment of the $200 and interest, and in addition thereto the conveyance of so much of each of the smaller tracts to Woods as is not within the boundaries of the larger tract as claimed by Plaintiff, applies to the fourth assignment of error. The language of the agreement between Plaintiff and Woods is that, "In addition to said sum of two hundred dollars to be paid as aforesaid, said Thomas John Clagget further agrees to convey, &c." It is clear from this provision, that an abatement of the purchase money as now claimed by Plaintiff, was not contemplated or expected by either party at the making of the agreement. The fourth assignment of error is therefore not well founded.

In addition to the above assignment of errors, it is claimed here that the agreement of Woods and Plaintiff is as to the boundaries of a tract of 2,010, and not of 1,100 acres, and that the smaller tracts may not be embraced within the boundaries of the 1,100 acres, and still embraced within the boundaries of the 2,010 acres as claimed by Plaintiff. It is evident from the allegations of the bill and the answers that the parties, in

speaking of the boundaries of the 1,100 acre tract, meant and referred to the boundaries of the large tract mentioned in the agreement between Plaintiff and Woods. They call it by a different number of acres, but mean the same boundary. The Plaintiff never made any effort to procure patents to the smaller tracts in his own name. He never paid or offered to pay Woods his purchase money, but, by implication at least, falsely claims that he had paid for it. Although he knew at the institution of this suit that patents had issued for the smaller tracts in the name of Kittle, he fails even to aver that he had ever demanded from either Woods or Kittle a conveyance or conveyances of the legal title. His allegation that Woods and Kittle claimed the land, and had sold a part or the whole of the smaller tracts to Dennison is denied, and there is no proof to the contrary. As the case appears before us, the Plaintiff seems to have commenced his suit without knowing or inquiring into the facts, and also, to have given the case but little care or attention after it was commenced, although he had ample time to do so, if there was justice and equity therein. He has come into equity asking its interposition in his behalf, and to obtain equity he must do equity. It is further objected that if the decree was otherwise right, it was error to direct commissioner Martin to retain a lien on the 187 acres, in the deed therefor to Clagget, as a purchaser at the sale, would not likely be willing to bid for the land with the lien upon it. We see nothing material in this objection, for bidders and purchasers at the sale must see and know from the decree of sale, under which the commissioner acts, that the land is being sold for the purchase money lien retained in the deed.

For these reasons the decree of the Circuit Court, which is appealed from, must be affirmed, and the appel-

1873.
June Term.

Clegget
v.
Kittle et al.

lee Woods must rocover against the Appellant his costs here expended.

MOORE, PAULL and HOFFMAN, Judges, concur in the foregoing opinion.