# Wheeling.

STEPHENSON *v.* RICE, *et al.*

*(Absent, JOHNSON, JUDGE).

Decided April 6, 1878.

S. sold R. certain land, and was to convey it to R. by deed, with general warranty when the first payment was made, which payment was to be made June 1, 1869; at the time of making the contract, R. made a note to one A. J. S. for the amount of the first payment, negotiable and payable at the Parkersburg National Bank, June 1, 1869. A. J. S. endorsed said note, and delivered it to S., who had it discounted; but when the note matured, A. J. S. represented to S. that R. had gone to Cincinnati with lumber for money to pay the note, and could not get back in time to meet the payment, and that he wanted to renew the note. Thereupon A. J. S. made a new note with S. as endorser, and by it lifted the first note, but neither R. nor A. J. S. ever paid it, and S. was compelled to pay it. HELD:

 I. That the first note was not received by S. as a payment on the contract.

 II. That the renewal by A. J. S. did not discharge R. from liability for the first payment.

 III. That S. not having parted with the title to the land, may subject it in equity to the payment of the purchase money.

1878.<br>Special Term.

Appeal with *supersedeas,* granted upon the petition of William and Martha Rice, by John L. Knight their guardian *ad litem,* to a decree of the circuit court of Pleasants county, entered on the 5th of April, 1876, in

*Was counsel in the cause below.

a cause in which J. M. Stephenson was plaintiff, and Josephus Rice and others were defendants.

Hon. J. Monroe Jackson, Judge of the fifth judicial circuit, rendered the decree complained of.

Moore, Judge, furnishes the following statement of the case :

Stephenson and Rice, entered into a written contract, signed and sealed by them respectively, September 1, 1868, in the following language, viz : "That the said Stephenson has sold to the said Rice, a tract of two hundred acres of land, situated in the county of Pleasants, on the right bank of Shawnee run, a branch of McKin's Fork of Middle Island creek, for which the said Rice has contracted to pay $4.00 per acre, as follows : $200.00 the 1st of June, 1869, and $200.00 per annum, to-wit : $200.00 June 1, 1870 ; $200.00 June 1, 1871 and $200.00 June 1, 1872, with interest on each payment from its date ; the said Rice is to have the said land surveyed at his own expense, and to run off in such a manner as not to affect the other land, and as nearly square as may be, and said Rice is to pay his proportion of the taxes on the land, of which this is a part; when the said land is surveyed and a plat furnished the said Stephenson, he is to make the said Rice a deed of general warranty for the said land, on the payment of the first payment; for the first payment the said Rice, has executed his note with A. J. Seckman as his security."

Stephenson filed his bill in chancery in the circuit court of Pleasants county, setting up the contract as he remembered it, stating that Rice or Seckman had the contract, and calling upon them to file it in court. The bill purports to file a copy of the survey of the land which Rice had made, showing the quantity to be two hundred and ten acres, and alleges specifically the bounds and description of the survey. Stephenson alleges that he "told Rice that he did not know him, and would not

sell to him without security for at least the first payment; Rice and Seckman went to one side, and after some agreement between themselves, they came into the room and remarked" to said Stephenson " that Seckman would join Rice in the note tor the first payment, and he would hold the land as his own until the first payment was made; thereupon, upon the express agreement that no deed was to be made until the first payment was made to him by the parties whom he understood were to be joint owners until the first payment was made, made Rice a title bond for the land described by certain boundaries, supposed to be about two hundred acres, the quantity to be ascertained by the said parties at their own expense." That the terms of the contract, as well as Stephenson remembered, were as follows : " The first payment to be made in the spring of 1869, with interest, May or June, the note payable in the Parkersburg National Bank, and $200.00 per year thereafter, with interest, until all was paid; the purchaser to pay the costs of the survey and the taxes on the same," and Stephenson to make a deed with general warranty " upon the receipt of the first payment." That about the time the first payment became due, Seckman came to Stephenson's house, and told him that Rice had gone to Cincinnati with lumber to sell for the payment of the notes in bank, but that he could not get back in time to meet the payment when it was due, and that he wanted to renew the note. That Stephenson was at that time sick, and could not go to the bank, but " wrote a note to the bank to permit Mr. Seckman to renew the same for a short time. This was done, but the last note was protested, and taken up by" Stephenson, "who had it discounted for his benefit." That after that, Rice wrote Stephenson "an insolent letter," saying that he had paid the amount of the note to Seckman, "and that Stephenson must look to him for the money, and demanding the deed," &c., &c. Complainant further alleges that he " supposes that this was

the secret arrangement made between Rice and Seckman at the time of the purchase, so as to cheat your orator out of his pay for the land."

Rice answered the bill, admitting he bought the land, and had agreed to pay therefor "in the manner alleged therein, and gave A. J. Seckman, as security for the first payment for $200.00," but denied that Seckman was a joint purchaser, or had anything to do with the purchase, " except as endorser of the note for the first payment, as above set-forth." Also admits that Stephenson, "expressed his unwillingness to sell the land, without a payment in hand or security therefor, and seemed to have confidence in said Seckman, and was willing and did take him as security for the first payment on a note given by respondent, negotiable in the Parkersburg National Bank, to the order of A. J. Seckman."

Rice alleges in his answer, that before the maturity of the note, Seckman was largely indebted to him, and that he made an arrangement with Seckman to pay off the note to complainant, when it should become due, and that he informed the complainant, that he had paid Seckman the amount of the note, and to look to him, Seckman, for the money; and, that Stephenson well knowing that Seckman had the money, permitted him at the maturity of the note to lift respondent's note, and took Seckman's individual note instead, and Seckman brought respondent's note to him, and gave him to understand that he had paid it off, at which time he settled all matters in difference between him and Seckman, and gave him credit for the amount of the note ; that had respondent known the arrangement made between Stephenson and Seckman, and that Seckman had not paid off the note, he had it in his power at that time to have made himself safe with Seckman, and would have done so ; that the money for the note could at its maturity, have been made off of Seckman, but instead of doing so, complainant, well knowing that said Seckman had the money to pay off the note in his own hands, negligently per-

mitted him to lift respondent's note, and give his own instead, and gave him time to become insolvent, and thereby defrauded respondent out of his remedy against Seckman, while he was yet solvent. He also denies complainant's allegation that there was a secret arrangement between respondent and Seckman, to defraud him; and he further alleges, that at the maturity of the note June 1, 1869, he did not ask for, nor want further time on it, as the matter was then entirely in the hands of complainant and Seckman, and that "the representation made by Seckman, and the arrangement made between complainant and said Seckman concerning the renewal of the note, was entirely unauthorized by respondent; and for which he is in nowise responsible;" and he alleges that he is ready and willing to pay off the remaining notes now due, &c.

On the 15th day of November, 1875, the court, upon the suggestion by complainant of the death of Rice, ordered the cause to be revived against William Rice and Martha Rice, minors, and only heirs-at-law of said Rice, deceased, and against John R. Shingleton, who had qualified as administrator of said Rice's estate; and on motion of complainant, John L. Knight was appointed guardian *ad litem* for said infant defendants, and on the 5th day of April, 1876, said guardian *ad litem* filed the answer of said infants to said bill of complaint, that they knew "nothing of the matters and things in said bill alleged."

On the same day, April 5, 1876, the cause was heard upon the bill taken for confessed as to Seckman, and Shingleton, administrator, and the answer of Josephus Rice and general replication thereto, and the answer of the infant defendants by their guardian *ad litem*, and general replication thereto, and upon the exhibits filed and proof taken in the cause, and argument of counsel Upon consideration whereof, the court was of opinion that the complainant had received no payment whatever upon the tract of land sold to Josephus Rice in his life

time; that according to the contract filed with the answer of Josephus Rice, all the purchase money mentioned in said contract, signed by said Stephenson and said Rice, is all due and unpaid, and that the sum of money mentioned therein and ascertained by the survey, to-wit: the sum of $840.00, with interest thereon from the 1st day of September, 1868, is a lien on the land therein sold, ascertained by the survey, filed with the bill, to be two hundred and ten acres; and adjudged, ordered and decreed, that unless the defendants or some one for them, within thirty days from the date of said decree, (April 5, 1876), pay the said sum of $840.00, with interest aforesaid, to the complainant or his attorney; then that K. B. Stephenson or Okey Johnson, special commissioners by said order appointed for that purpose, either of whom may act, shall proceed to sell the said tract of two hundred and ten acres of land mentioned in the bill, and described in the survey filed therewith, to pay the same, &c., &c. The court further directed that "before proceeding to sell said land, the complainant is required to make, duly execute and acknowledge, and file in the papers of this cause, a proper deed of general warranty, for said tract of two hundred and ten acres of land, to the said heirs of Josephus Rice, deceased," &c.

From this decree said William and Martha Rice, by their said *ad litem* guardian, petitioned for and obtained an appeal to this Court, with a writ of *supersedeas*.

*George O. Davenport* and *W. W. Hall,* for appellants.

*J. A. Hutchinson,* for appellee.

MOORE, JUDGE, delivered the opinion of the Court:

The appellants submit, first, that "the cause was not tried in the presence of the guardian *ad litem,* nor were the depositions taken in his presence." Although that was a ground of error assigned by the petition, it was

1878.
Special Term.

Stephenson
v.
Rice *et al.*

not insisted on by the counsel, in argument; nor would it have availed them, even if they had seriously insisted on it, because the decree shows, that the cause was heard upon the answer of the infants by their guardian *ad litem,* and he was therefore, duly before the court in the interest of the infants. There is nothing in the record to show, whether the depositions were legally and properly taken, or not. No objection was made in the court below to the hearing of the cause upon the depositions, it is certainly too late to raise the objection for the first time in the Appellate Court.

The second ground of error submitted is, that "the facts clearly show that the first note was received as a payment on the contract, and that the renewal by Seckman alone, clearly discharged Rice from any liability on said note, or for the payment."

The written contract, exhibited by Rice, with his answer, as appears in the manuscript record of this cause, states, "when the said land is surveyed and a plat furnished the said Stephenson, he is to make the said Rice a deed of general warranty for the said land, on the payment of the first payment, for the first payment the said Rice has executed his note with A. J. Seckman as his security." The contract also states, that the first payment was to be "*the 1st day of June,* 1869," * * * * "with interest" * * * * "from its date."

As to the circumstances attending the making of the contract, Stephenson alleges by his bill, that "after some conversation as to the price and terms of payment, Rice said he would take a certain piece at the price of $4.00 per acre, and pay $200.00 per annum with interest; the first payment to be in the Spring of 1869, after the sale of some lumber he expected to have for sale at that time. Your orator told Rice, that he did not know him, and would not sell to him without security for at least the first payment. Rice and Seckman went to one side and after some agreement between themselves they came into the room and remarked to your orator, that Seckman

would join Rice in the note for the first payment, and he would hold the land as his own until the first payment was made thereupon, upon the express agreement that no deed was to be made, until the first payment was made to him by the parties, whom he understood were to be joint owners until the first payment was made, made Rice a title bond for the land," &c. Again, the complainant alleges: "The terms of the contract, as well as your orator remembers were as follows: the first payment to be made in the Spring of 1869, with interest, May or June; the note payable in the Parkersburg National Bank, and $200.00 per year thereafter, with interest until all was paid." * * * * "and your orator, upon the receipt of the first payment, was to make a deed of general warranty for said land." That "about the time the first payment became due, Seckman came to his house, and told your orator, that Rice had gone to Cincinnati with lumber to sell for the payment of the notes in bank, but that he could not get back in time to meet the payment when it was due, and that he wanted to renew the note. At the time your orator was sick and could not go to the bank, but he wrote a note to the bank to permit Mr. Seckman to renew the same for a short time; this was done, but the last note was protested, and taken up by your orator, who had it discounted for his benefit.

Rice answers to that matter, "that it is true as is alleged in complainant's bill," that he bought of complainant the tract of land mentioned in said bill, " and for which he agreed to pay in the manner alleged therein, and gave A. J. Seckman as security for the first payment for $200.00," but denies that Seckman was a joint purchaser, " or had anything to do with the purchase except as endorser of the note for the first payment," and exhibits the written contract to show that " he was sole purchaser." He " also admits that at the time of the said purchase, the complainant expressed his unwillingness to sell the land without a payment in hand or security therefor, and seemed to have confidence in said

Seckman, and was willing and did take him as security for the first payment, in a note given by respondent, negotiable and payable in the Parkersburg National Bank, to the order of A. J. Seckman," (which note he exhibits with his answer). Rice alleges in his answer, " that before the maturity of the note, Seckman was largely indebted to respondent, and he made an arrangement with Seckman to pay off the note to complainant when it should become due, and informed the complainant that he had paid Seckman the amount of the note, and to look to him (Seckman), for the money ;" and that " complainant, well knowing that said Seckman had the money, permitted him at the maturity of the note, to lift respondent's note, and took Seckman's individual note instead ;" and " that at the time of the maturity of said note, to-wit, June 1, 1869, he did not ask for nor want further time on it, as the matter was then entirely in the hands of said complainant and said Seckman, which the complainant well knew and understood, and the representation made by Seckman, and the arrangement made between complainant and said Seckman concerning the renewal of the note, was entirely unauthorized by respondent, and for which he is in no wise responsible."

On the part of the complainant, he testified himself as follows :

"That in the early part of the winter of 1869, Josephus Rice and A. C. Seckman came to my house in Wood county, to purchase a piece of land owned by me in Pleasants county. I had no acquaintance with Rice, but had with Seckman's father. Rice proposed to buy two hundred acres on a credit, but I refused to sell unless he made a payment in hand ; this he could not do. After some conversation on the subject, Rice and Seckman went out, and after some arrangement between them, as I supposed, they came back and proposed that they would give me a note for $200.00 the first payment, payable in bank about the 1st of June thereafter,

saying that they would by that time move lumber to Cincinnati, and get return for it, and would pay the note; I consented to this, but on the express condition that I would not make a deed until the money was actually paid; that I would not regard the note payment until I got the money. I had the note discounted in bank, and about the time it became due, Seckman came to me and said that Rice had gone to Cincinnati with their lumber, but had not come back, and he wished to renew the note. I was sick at that time, but wrote a note to Mr. Moss, the cashier of the Parkersburg National Bank, to take a new note from Seckman, and I would endorse it when I came in; this was done, and the note fell due in August, but was protested for non-payment, and paid by me on the 24th day of August, 1869, as I see by bank book; I did not intend the cashier to give up the note signed by Rice, until the new one was paid. The note at the time of payment in August, was $202.53. I have no copy of the title bond for the land, but my recollection is, that it stipulated that no deed was to be made until the money was paid."

On behalf of the defendants, the said A. J. Seckman testified, that he was present when Rice contracted to purchase of Stephenson the land; that he and Rice were not partners, nor in any way jointly interested in this purchase, it was an individual matter between Rice and Stephenson; that Stepenson made objection to taking Rice personally for the first payment. The contract, as he understood it, was: "Mr. Rice was to pay $4.00 per acre for the land; the first payment of $200.00, was to be made on the 1st day of June, A. D. 1869; the note was made payable to my order at the Parkersburg National Bank; I endorsed the note, and Stephenson took the note so endorsed as payment for the first $200.00."

The balance of this witness's testimony may be seen from the following questions and answers:

Question.—At the same time was there a written contract entered into between you and Rice, by which Rice

agreed to place under your control, and deliver, if necessary, to you lumber and other property taken from the land, sufficient to secure you in·the event of your having to pay the note?

Answer.—There was a written contract to that effect, drawn by David Johnson, as dictated by K. B. Stephenson.

Question.—Did Mr. Stephenson have knowledge of the terms of this agreement between you and Mr. Rice?

Answer.—I cannot state positively.

Question.—Did Rice ever comply with the terms of the agreement so entered into between you and him?

Answer.—He did.

Question.—Did you go to Parkersburg about the time the note became due, and have the note renewed by giving your individual note, negotiable and payable at the Parkersburg National Bank of West Virginia?

Answer.—I was at Parkersburg on the day this note became due, and lifted said note by paying the interest then due on it, and gave my personal note, payable in sixty days, for $200.00, and paid the interest in advance on this note; my individual note was payable to J. M. Stephenson.

Question.—Did Mr. Rice know anything about you getting the note renewed at the time it was done?

Answer.—I cannot state that he did."

Such being the proof of the facts in this cause, it is not necessary to comment on it, as it clearly shows that Syllabus 1 Stephenson did not receive the first note as a payment, but in fact that it was the distinct understanding that a deed should not be made until the first payment had actually been made. The note was merely the evidence of the existence of the debt, merely a mode of payment; and as it was not paid at its maturity, it would be ridiculous to say that Rice, whose duty it was to pay it, but who shirked the bank at its maturity, should now be acquitted of the debt. The holding back the deed shows positively that Stephenson looked to Rice for the pay-

1878.
Special Term.

Stephenson
v.
Rice *et al.*

Syllabus 2

Syllabus 3

ment, and not merely to Seckman. Stephenson has never parted with the title to the land, has never released Rice from his obligation to pay, but Rice has entirely failed to comply with his part of the contract, and under the principles laid down in *Yancey* v. *Mauck, et al.,* 15 Gratt. 300; *Poole & Co.* v. *Rice,* 9 W. Va. 73; *Dunlap's ex'or* v. *Shanklin's ex'or,* 10 W. Va. 662; *Moses* v. *Trice,* 21 Gratt. 556; Stephenson has a clear right to resort to the land for satisfaction of the debt.

As to the point alleged that the answer set up claim for affirmative relief; the answer shows clearly only matter of defence, and is not sustained by the evidence. The decree should be affirmed with costs and damages.

JUDGES GREEN and HAYMOND concurred.

DECREE AFFIRMED.