## CHARLESTON

COLUMBUS ONYX & MARBLE CO. v. MILLER *et al.*

Submitted June 16, 1914.     Decided September 15, 1914.

1.  MINES AND MINERALS—*Specific Performance—Assignment of Lease —Validity.*

    An assignment of a leasehold estate in lands for a term exceeding five years, in writing but not under seal, is ineffectual to pass the legal title; and a court of equity will not compel the assignor to execute a proper assignment until he has been paid the full consideration, even at the suit of a subsequent purchaser from his assignee, who bought without knowledge that the purchase price was not paid. (p. 688).

2.  EVIDENCE—*Parol—Receipt.*

    A receipt is only prima facie evidence and may be contradicted or explained by oral testimony. (p. 688).

3.  ESTOPPEL—*Estoppel by Conduct—Requisites.*

    A person is not estopped by his conduct, unless it was his duty to speak or act, and he has, by his silence, false statement or refusal to act, intentionally misled another to his prejudice concerning a material matter. (p. 691.

Appeal from Circuit Court, Mercer County.

Bill by the Columbus Onyx & Marble Company against

R. B. Miller and another.   From decree for plaintiff, defendant named appeals.

*Reversed, and Bill Dismissed.*

*Randolph Henry,* for appellant.

*B. W. Pendleton,* for appellee.

WILLIAMS, JUDGE:

On the 1st of September, 1906, John W. Meadows and wife executed to R. B. Miller, one of the defendants, a mining lease for the term of fifty years, giving him the right to mine and ship fluorspar or onyx from a tract of 114 acres of land in Mercer county, West Virginia.   The lease was acknowledged by Meadows and wife on the 3rd November, 1906, and recorded on the 3rd April, 1907.   Endorsed on the lease are two purported assignments thereof, the first dated December 29, 1906, by R. B. Miller to J. M. Clark of Columbus, Ohio, and the second dated March 30, 1907, from said Clark to the plaintiff, a West Virginia corporation having its principal place of business in Columbus, Ohio, and its chief works in Mercer county, West Virginia.   Those assignments were not executed under seal and were not acknowledged by the assignors.   The Columbus Onyx & Marble Company brought this suit in August, 1909, against said Miller and Clark praying that they be required to specifically perform their several contracts by executing proper assignments under seal.   Miller is the only one who makes defense; Clark is a non-resident and was proceeded against by order of publication and has not appeared.   Miller denies that he assigned the lease to Clark, and avers that his name appearing to the assignment is not his signature, but a forgery, and that no consideration was paid to him for the alleged assignments.   He avers that neither said Clark nor the plaintiff was ever in possession of the leasehold, but that he himself has been in possession of it ever since the demise to him.   The answer is in the nature of a cross-bill, and avers that Clark fraudulently got possession of the deed of lease, and that he, C. T. Ensminger, E. L. Pollock, Ray Lovell, said Ensminger's two sons, Homer Elliott, and others are attempting to swindle respondent out

of his property, and that his name was forged to the assignment in furtherance of their fraudulent scheme. He prays that said pretended assignments be cancelled as clouds upon his title.

We do not think the evidence supports the charge of forgery. The original lease, with the endorsements thereon, is before us with the record, and R. B. Miller's name to the original Meadows lease, admittedly signed by him, resembles very much the handwriting of his name to the assignment. Miller had intrusted the paper to Clark and E. L. Pollock some days before the meeting in Columbus, Ohio, in December, 1906, and Miller was present at that meeting on the 29th December, 1906, the date of the alleged assignment. The body of the assignment is written with a typewriter, and the names of Pollock and Clark both appeared as joint assignees, but a line was drawn through Pollock's name with a pen. C. T. Ensminger, whose name appears as a witness to Miller's signature, swears that Miller signed the paper in his presence, and that he refused to sign it until Pollock's name was erased. Ray Lovell testifies that he had received letters from Miller, and that his signature to the letters corresponds to the handwriting of the signature to the assignment. J. M. Clark testifies that it is Miller's signature; that he, Pollock and Miller had a conference together, at the Columbus meeting, and a good deal of controversy, and that Miller became somewhat out of humor and refused to turn over the lease until Pollock's name was stricken out, which was done, and that Miller then signed the paper. E. L. Pollock and Clark both had a good deal of correspondence with Miller, and Pollock also swears that it is Miller's signature. In addition to the foregoing testimony, Henry Meadows and Jonathan Meadows both testify to having heard Miller say that he had sold out to Clark. Miller testified that he did not sign the writing, but we think the foregoing evidence proves the fact that he did sign it.

But the assignment is not under seal, and the leasehold estate is for a term of fifty years. Consequently the writing did not operate to pass title to Clark. ''No estate of inheritance or freehold, or for a term of more than five years, in

lands, shall be conveyed, unless by deed or will." Sec. 1, Ch. 71, serial section 3739, Code 1913. The transfer of the lease should be of equal dignity with the lease itself. *Comley* v. *Ford,* 65 W. Va. 429. The writing has only the effect of a contract to convey, which leaves Miller vested with the legal title, and a court of equity will not deprive him of it until his vendee, or some one for him, pays the agreed consideration. That it has not been paid is proven, we think. The assignment itself does not set forth the nature of the consideration, and, although receipt of a valuable consideration is acknowledged, it is not conclusive evidence that the consideration was actually paid; it is prima facie evidence and may be overcome by parol proof to the contrary. A receipt is not a contract, precluding oral evidence to contradict or vary its terms. *Dunlap* v. *Shanklin,* 10 W. Va. 662; *Cushwa* v. *Improvement L. & B. Ass'n.,* 45 W. Va. 490.

Respondent insists that the consideration agreed on was, that he was to be reimbursed certain expenses which he had already incurred, and was to be paid any additional expenses necessary to be incurred by him in the future, in making further explorations of the leasehold, and in quarrying and shipping samples of onyx to Columbus to Clark and Pollock who were to secure subscriptions to the capital stock of a corporation to be formed to take over and operate the property, and that he was to be paid $1,000 in cash and one-sixth of the capital stock of the corporation, which he says was to be capitalized at $150,000. We think his version of the agreement is borne out by the evidence. Negotiations began between him and Clark and Pollock early in the fall of 1906, for the exploitation of the property. Respondent testifies that, about the 15th October, 1906, Clark and Pollock came to West Virginia to see him, and that a written contract, or option for sixty days, embodying his claims as above stated, was then entered into; that this option expired and was renewed in practically the same terms, on the 25th December, 1906, in Columbus, Ohio; that he remained in Columbus until the 31st December, expecting them to pay him some money but they failed to do so; that they then owed him about $1,100; that after that time they paid him $200 at one time,

$25 at another, and $35 at another. These payments, he says, did not repay his expenses. The contracts were entrusted to Clark and Pollock who were jointly interested in the project. Those contracts are not in the record, but respondent did what he could to get them before the chancellor. He called upon plaintiff to produce them, and also summoned Pollock and Clark to produce and file them with their depositions. They both admitted the existence of the contracts and that they had had them. Clark testified that Pollock had them, and Pollock testified that he had searched among his papers for them and could not find them. This effort by respondent to get the papers was sufficient ground to admit oral proof of their contents; and respondent's evidence as to what they contained is not denied. Clark's deposition was thrice taken, each time in the city of Columbus, twice by plaintiff and once by defendant when he sought, by *subpoena duces tecum*, the production of the papers. In his first deposition, taken by plaintiff in July, 1910, on cross-examination concerning the agreement between him and respondent, Clark was asked this question: ''What was the nature of that agreement?'' and answered as follows: ''You want me to answer that? Well, I will just say that whatever that agreement was we have on paper, and I just cannot tell you verbally what it was.'' He was also asked what amount, if anything, he paid Miller for the property and replied: ''I do not remember the amount, sir.'' Clark and Pollock were charter members of the plaintiff corporation, each owning fifty shares of its capital stock, and Clark, according to his testimony, was president of the company for about two years, and Pollock had the custody of nearly all the papers. But Clark was not a stockholder at the time his deposition was taken; he had sold his stock to Ray Lovell who is now the corporation's secretary and treasurer.

In view of respondent's evidence, which we think is sufficient to prove that he has not been paid the agreed consideration for the leasehold, it would be inequitable to take from him the legal title. He can not be required to perform his part of the contract when it appears that Clark has not performed his part. Clark acquired, not the legal title, but only

an equity, and he can not, by the assignment of a bare equity, put his assignee in any better position to demand performance than he occupied himself. He who asks equity must do equity, is a familiar maxim of the law. Not having parted with the legal title to the leasehold, respondent's equity is superior to plaintiff's, unless he is estopped by his conduct to assert it, a question which we will discuss later on. His position is even stronger, if any difference, than if he had made a conveyance of the legal title and retained a vendor's lien to secure the unpaid purchase price. 3 Pom. Eq. Sec. 1260. It is well settled by the decisions that a vendor, who has not parted with his title, may enforce collection of the purchase money against the land in the hands of a subsequent purchaser from his vendee, notwithstanding he took from his vendee personal or other securities for the same, and notwithstanding the purchaser from his vendee had no notice that the purchase money, or any part thereof, was unpaid. *Yancey* v. *Mauck,* 15 Grat. 300; *Cleggett* v. *Kittle,* 6 W. Va. 452; *Richards* v. *Fisher,* 8 W. Va. 55; *Stephenson* v. *Rice,* 12 W. Va. 575, 586. The infirmity of Clark's title appeared upon the face of the paper, and plaintiff took it subject to the rights of his vendor, and is in no better position than Clark was in. It acquired his right and no greater estate, and it must perform his contract with respondent before it can compel performance by him. Moreover, neither Clark nor plaintiff appears ever to have been put in possession of the leasehold. Respondent has the possession, and plaintiff has made several unsuccessful attempts, by suits before a justice of the peace, to oust him. Its agents have three times had him arrested on warrants for trespassing, and on two occasions the justice discharged him, and on the other the proceeding was dismissed by plaintiff.

It is insisted that respondent is estopped, by his conduct, to assert any claim to the property, that he kept silent when he should have spoken concerning his interest and that many of the stockholders in the plaintiff company were thereby misled to their prejudice in subscribing for its stock. The fraudulent conduct referred to has reference to a meeting in Columbus, on the 2nd March, 1907, of a number of persons

who had already agreed to take stock, held for the purpose of organizing a corporation. No charter having then been obtained, no organization was effected at that meeting, but respondent was present, and several of the plaintiff's witnesses testify that the matter of the lease, and Clark's interest in it, was discussed in respondent's presence and that he did not claim to have any interest himself. But no one says that he was asked whether or not he had any interest, or that the lease was shown to him, or that he was asked, or said, anything concerning it. He testifies that the only discussion, had in his presence, was in reference to the stone in the land, the machinery that would be required to quarry it, and the amount of capitalization of the company. Nothing, he says, was said in his presence about the lease or his assignment of it to Clark. He further says the meeting was held in the offices of the Columbus Zinc Company; that there were three rooms and the men would go back and forth, first to one room and then to another; that he saw no papers exhibited and heard no discussion about any conveyance of the leasehold. Plaintiff's evidence fails to show that respondent was guilty of fraudulent concealment of a material fact, when he should have spoken, such as would estop him to assert a claim to the property. Indeed, if anyone has fraudulently concealed material facts from plaintiff's stockholders, it is Clark and Pollock. They were its most active promoters and, formerly, its largest stockholders and officers. They do not deny that they knew respondent had an interest. Why did they not make it known? We think the record discloses the reason. It seems to have been a deliberate scheme on their part to defraud him of his property, and to prevent his having any stock in the corporation. Respondent is not estopped. "It is essential to an estoppel by conduct that the party claiming to have been influenced by the conduct of another should not only be destitute of information as to the matter to which such conduct relates, but also without convenient and available means of acquiring such information." *Atkinson* v. *Plum,* 50 W. Va. 104. See also *Williamson* v. *Jones,* 43 W. Va. 562, and *Bates* v. *Swiger,* 40 W. Va. 420, for a full discussion of the doctrine of estoppel by conduct. If anyone

present at the meeting desired to know what, if any, interest respondent had in the property, why did he not inquire of him. Furthermore, why was respondent notified, a day or two before, to attend the meeting, if he had no interest? The lease was then in Clark and Pollock's possession, and the alleged assignment to Clark bore date December 29, 1906, two months before the meeting. The giving of the notice can be understood only on the theory that respondent was then acknowledged to be an interested party. Plaintiff's own witness Henry Meadows testified that respondent told him he had sold the property to Clark, and admitted that he also said he had retained a one-sixth interest. This agrees with respondent's own testimony. A charter was issued on the 15th of March, 1907, by the secretary of state, but when an organization was effected does not appear. It does appear, however, from respondent's testimony that he received no further notice to attend stockholders' meetings.

J. W. Meadows, the lessor, is now dead, and it is not claimed that there has ever been a forfeiture of respondent's lease. But in order to get rid of his claim if possible, plaintiff induced Mr. Meadows, early in the year 1908, to execute another lease on the same property directly to it, changing somewhat the terms of rental from the original lease. Writing to Mr. Meadows on the subject of the new lease, under date of January 21, 1908, Mr. Chas. E. Albright, then plaintiff's secretary, says: "As to the lease, I had only one object in view, and that was to cut R. B. Miller absolutely out of all relation to you and to us." And, in a letter of 12th February, following, he again writes: "I am in receipt of your new lease to this company. Within a few weeks, I shall prepare a statement for your signature, to avoid the old one, and annul it completely, so as to eliminate Mr. Miller forever."

We think it sufficiently appears from the record that plaintiff knew, through its officers and agents, all the time that respondent had an interest with Clark and Pollock in the leasehold, but, for some unexplained reason, wished to cut him off from any interest as a stockholder.

Respondent failed to make J. M. Clark a party defendant

to his cross-bill and, therefore, the affirmative relief for which he prays can not be granted.

The decree is reversed and a decree will be entered here dismissing plaintiff's bill.

*Reversed, and Bill Dismissed.*