# Charleston.

DUNLAP'S EX'RS *et al. v.* SHANKLIN, EX'R, *et al.*

Decided May 2, 1877.

1877.
January Term.

1. Giving a receipt or taking a note, with security, from the pur·chaser, or taking the note of a third party, specifying in either case that it is for the purchase money, will not, while the title remains in the vendor, be an extinguishment of the vendor's lien, unless the purchase money has been actually paid.

2. Taking a note from the debtor, or a note of a third party, is no discharge of the debt, unless it is expressly agreed between the creditor and debtor that it is in absolute payment thereof.

3. A receipt may be explained or contradicted by parol evidence.

4. S., as executor of D., having power to sell and convey lands of his testator, sells a tract of land as such executor to C., and executes to C. the following receipt:

"Received of Thomas S. and Isaac H. Campbell, bonds on the Messrs. Crumps to the amount of $12,000, as a payment for purchase of Red Sulphur Springs.

"February 3, 1858.      "RICHARD V. SHANKLIN, *Ex'r.*"

The bonds proved to be worthless, and the vendor retained the legal title. HELD:

I. That the receipt of the bonds was no extinguishment of the lien for the purchase money.

II. That said receipt was not *prima facie* an absolute payment of the purchase money on said land.

Appeal and *supersedeas* allowed upon the petition of Charles H. and James Dunlap, executors of Addison Dunlap, deceased, and Wm. Adair administrator of I. H. Campbell, deceased, to a decree of the circuit court of Monroe county, rendered at its May term, 1873, in a cause in chancery in said court then pending, in which

said executors of Addison Dunlap and others, were 1877.
January Term.

Dunlap's ex'rs
et al.
v.
Shanklin, ex'r,
et al. plaintiffs, and Richard V. Shanklin, ex'or, and others, were defendants.

Hon. Homer A. Holt, Judge of the eighth judicial circuit, rendered the decree complained of.

JOHNSON JUDGE, who delivered the opinion of the Court, furnishes the following statement of the case.

R. V. Shanklin, executor of Alexander Dunlap, deceased, on the 3d day of February, 1858, sold to Thomas S. Campbell a one-third interest in the Red Sulphur Springs property, in Monroe county, and bound himself to make title to all his claim, as such executor, he having the power under the will of said Alexander Dunlap, to make such title; and said Campbell agreed " to pay said R. V. Shanklin, executor of Alexander Dunlap, on or before the 1st day of March next thereafter, the sum of $12,502.49, to be paid in bonds bearing legal interest, and executed by Messrs. William and William B. Crump, of the county of Mercer, Virginia, to said Thomas S. and Isaac H. Campbell, for purchase money of land known as Culbertson's Bottom, lying on New River, in the county of Mercer, Virginia, the payment of said bonds being secured by lien on said lands; said bonds to be duly assigned by said Thomas S. and Isaac Campbell, and when the foregoing agreement is complete within all its parts by each party, then the foregoing obligation to be void, otherwise to remain in full force and virtue against the party not complying."

The agreement, of which the foregoing is the only part material to the consideration of this cause, was " duly signed and sealed by the parties thereto."

On the same day there were assigned to Shanklin, in pursuance of this contract, four bonds, by the said Campbells, executed by Crumps, for which Shanklin executed the following receipt:

" Received of Thomas S. Campbell and Isaac H.

Campbell, bonds on the Messrs. Crumps to the amount of $12,000, as a payment for purchase of Red Sulphur Springs, February 3, 1858.

RICHARD V. SHANKLIN, *Executor.*"

Subsequently it was developed that Thomas S. Campbell had purchased the Culbertson Bottom lands from the heirs of Andrew Reed, and that there was due from him to them about $14,000 of purchase money for which the said lands were liable, in the hands of the Crumps. A chancery suit was brought against Campbell by Reed's heirs, and a decree obtained for that amount, and the lands were directed to be sold to pay the same. The Crumps became entitled to an abatement on their bonds to that amount, which was more than sufficient to absorb the amount of the bonds held by Shanklin.

On the 21st day of November, 1859, the said Shanklin, and Thomas S. and Isaac H. Campbell, made another agreement, which after reciting the above stated facts, proceeds, " Now, therefore, the said Thomas S. and Isaac H. Campbell, have further assigned to said Richard V. Shanklin, as executor as aforesaid, the said 5th and 6th bonds hereinbefore described, with the understanding that these bonds are all assigned for the purpose of having therefrom the said sum of $12,440, with interest thereon from the 3d day of February, 1858, and that said Richard V. Shanklin, executor, &c., is only entitled to receive from said Crumps, or from said Thomas S. and Isaac H. Campbell, the said sum of $12,440, with interest thereon from the 3d day of February, 1858, on account of said assignments. And it is understood that if, after allowing to said Crumps all the credits to which they may be entitled on said bonds on account of the payment of what is due Reed's heirs, there should be enough of said bonds to pay the amount due to said Richard V. Shanklin, executor, &c., as it is evident there will not be, the said Thomas S. and Isaac H. Campbell, are bound to pay the balance, and the said interest in the said Red Sulphur Springs property is to

1877.
January Term.

Dunlap's ex'rs
et al.
v.
Shanklin, ex'r,
et al.

remain bound for the same, until the whole amount is paid to said Richard V. Shanklin."

On the 3d day of February, 1858, the same day said Shanklin, executor, made the sale to Thomas S. Campbell, Addison Dunlap, Thomas S. Campbell and Isaac H. Campbell, entered into a partnership for the purpose of carrying on business at the Red Sulphur Springs; they conducted said property, or rather they and the survivors of the partneship did until 1866, when this suit was brought, the plaintiffs alleging in their bill that the property could not be properly divided, that it was a watering place, and ought to be sold as a whole, and pray that a sale might be had, and after paying the debts, the residue shonld be divided among the parties plaintiff and defendants who were entitled to receive the same.

To this bill, R. V. Shanklin, executor of Alexander Dunlap, was made a defendant, and filed his answer averring that as the executor of Alexander Dunlap, he had never made a deed to Thomas S. Campbell, for the one-third interest he had sold him, and asserting a lien on said property for the unpaid purchase money. There was a reference to a commissioner to ascertain the liens and their priorities, and he reported as the first lien on the one-third of said property, $8,783.33, as of the 15th of November, 1870 of unpaid purchase money, due R. V. Shanklin, executor of Alexander Dunlap. To which report the plaintiffs excepted as follows :

" The plaintiffs except to Commissioner Calloway's account taken in this case, because he has reported a primary lien on one-third of the Red Sulphur Springs property in favor of Richard V. Shanklin, executor of Alexander Dunlap, deceased, for a debt of $8,783.33 as of the 15th of November, 1870, balance of purchase money due for said property by Thomas Campbell. The vendor's lien had been extinguished by an assignment to him (Shanklin) of bonds on William and William B. Crump, a receipt given in discharge of the purchase money, and a new company formed, upon the faith that,

84

these bonds on the Messrs Crump were in discharge of the purchase money. All that Mr. Shanklin can claim is to stand as a creditor upon the assignment, which would place him upon a common footing with the other creditors at large."

On the 23d day of May, 1873, the circuit court of Monroe county, rendered a decree in the cause, overruling the said exceptions to the commissioner's report, and confirmed the said report, and ordered that the commissioner, theretofore, appointed to make sale of the property mentioned in the cause, report to the court the amount arising from said sale when made, in order that the court might distribute the fund, according to the report of Calloway and the supplemental report of Kester, which last report was not excepted to.

From this decree the appeal was taken to this Court.

*Samuel Price,* for appellants, relied upon the following authorities:

*Moore's adm'r v. Fitz Randolph, et al.,* 6 Leigh, 175; *Watt et al. v. Kinney et ux.,* 3 Leigh, 272; *Cox &c., v. Romine,* 9 Gratt., 27.

*Frank Hereford,* for appellees, referred to the following authorities:

*Yancy v. Mauck, et el.,* 15 Gratt., 311; *Watts v. Kinney,* 3 Leigh, 272; *Hanover v. Backwell,* 6 B. Mon., 67; *Appleton v. Kesman,* 9 Mo., 637; *McMurray v. Taylor,* 30 Mo., 263; *Hurley v. Hall,* 35 Md.; 459; *Brush v. Kinsley & Adams & Stillwell,* 14 Ohio, 20; *Burns' ex'r v. Campbell,* 4 Gratt., 125; *Knisley v. Williams,* 3 Gratt., 265; *Woods v. Sullivan,* 44 Ala., 686.

*James F. Patton,* for appellees, referred to the following authorities:

Code W. Va., 474, §5; *Tompkinson v. Mitchell,* 2 Rand., 428; *Wilson v. Davidson,* 2 Rob. R., 384; *Redford v. Gibson,* 12 Leigh, 332; *Lewis v. Caperton,* 8 Gratt., 148;

*Yancey v. Mauck,* 15 Gratt., 300; 1 L. Ca., Eq., 340, 366.

1877.
January Term.

Dunlap's ex'rs
et al.
v.
Shanklin, ex'r,
et al.

JOHNSON, JUDGE, delivered the opinion of the Court.

The question presented is, was the decree overruling the exceptions to the commissioner's report, and conferring the same, right?

There is no dispute as to the balance of the purchase money due, nor of the fact that R. V. Shanklin, executor, never received that balance from any person.

The errors assigned by the petitioners are:

1. Because any vendor's lien was enforced as against any of the creditors of Campbell, and

2. Because this lien was preserved to the prejudice of the partners of Campbell, who became interested in this fund, upon an assurance that the purchase money was all paid, and thus they became bound for the partnership debts, notwithstanding this fund was withdrawn from the partnership liability.

Shanklin was acting in a fiduciary capacity when he made the sale to Thomas S. Campbell, and he would have had no right to have extinguished the lien for the purchase money until it was all paid. *Wood et al. adm'rs v. Sullivan et al.,* 44 Ala., 686.

But did he extinguish the lien for the purchase money? It is claimed in the exceptions to the report that he gave a receipt in discharge of the purchase money. In *Tobey v. Barber,* 5 Johns., 68, it was held, that where A. being indebted to B. for two quarters rent on a lease, gave to B. the note of C., for part of the amount, and paid the the residue in money, and B. endorsed a receipt on the lease as having received the amount in full for the rent, and the note not being paid, B. afterwards brought an action of covenant for the rent, that the receipt though absolute in its terms, was not conclusive evidence of the payment, and that parol evidence was admissable to show that the note was part of the sum included in the

receipt, and that parol evidence is admissable to explain or contradict the terms of a receipt.

In *Johnson v. Weed et al.*, 9 Johns., 310, which was an action of *assumpsit*, for goods sold and delivered, it was held, that a promissory note of a third person taken for goods sold and delivered is no payment, unless the vendor specially agrees to take it absolutely as payment. And where a note was taken in payment and a receipt in full given by the vendor, it was a question of fact for the jury to decide under all the circumstances of the case, whether there was such a special agreement or not. In that case the court said, the books all agree that there must be a clear and special agreement that the vendor shall take the paper absolutely as payment, or it will be no payment, if it afterwards turn out to be of no value.

In *Appleton v. Kennon*, 19 Mo., it was held, that the acceptance by a credit of the note of a third party for a debt is not *prima facie* an absolute payment. To have that effect it must be agreed that it should be taken in satisfaction. The receipt, which is claimed in this case to be conclusive evidence of the payment of the purchase money and an extinguishment of the lien, is: "Received of Thomas S. Campbell and Isaac H. Campbell, bonds on Messrs. Crump to the amount of $12,000, as a payment for purchase of Red Sulphur Springs."

Now, under the authorities, and according to reason, this could not be considered even *prima facie* evidence that if these bonds were to turn out to be worthless, that the loss was to fall upon the estate of Alexander Dunlap, deceased. The true intent and meaning of the receipt is, that when these bonds are paid, the purchase money to that extent will be paid and no more. But this receipt was given on the 3d day of February, 1858, and the commissioners' report shows that Thomas S. Campbell, himself, on the 1st day of June, 1859, made a repayment on said purchase money of $1,214, showing clearly that he did not regard the giving of the receipt

1877.
January Term.

Dunlap's ex'rs
et al.
v.
Shanklin, ex'r,
et al.

by Shanklin, as evidence that the bonds themselves were a payment of the purchase money, whether they were good or worthless. Again the contract between them showed that the Crump bonds were to be assigned, by the said Campbells, and it is not provided that the said assignment was to be without recourse; but on the contrary, they considered themselves bound to make good the said bonds. Again the contract of 21st of November, 1859, between said Shanklin and the two Campbells, showed clearly that they did not place any such construction upon the receipt, as is now put upon it, by their personal represensatives, for in that contract they assign to Shanklin, two other of the Crump bonds, and say: "It is understood that if, after allowing the said Crumps all the credits to which they may be entitled on said bonds on account of their payment of what is due to Reed's heirs, there should be enough of said bonds to pay the amount due to the said Richard V. Shanklin, executor, etc., as it is evident there will not be, the said Thomas S. and Isaac H. Campbell, are bound to pay the balance and the said interest in the said Red Sulphur Springs property is to remain bound for the same until the whole amount is paid to said Richard V. Shanklin."

The last clause of said contract was wholly unnecessary while the said Shanklin, executor, retained the title in himself, but it shows that they were not contending and never did contend that the assignment, of the Crump bonds to the said Shanklin, was ever considered by them as an absolute payment of the purchase money on the one-third interest in the Red Sulphur Springs property purchased of said Shanklin, executor, by Thos. S. Campbell.

It is showen by all the papers, the acts of the parties and the surrounding circumstances, that the receipt was never intended to be a receipt for the purchase money, but if it was in terms a receipt for the purchase money, it was liable to be explained or even contradicted by parol evidence.

1877
January Term.

Dunlap's ex'rs
et al.
v.
Shanklin ex'r
et al.

In *Harley v. Hollyday*, 35 Md., 469, Bartol, C. J., says: "The questions in this case arise upon an agreed statement of facts. There is no dispute with regard to the real amount of the purchase money, remaining unpaid to the appellee, for the land sold by him to James Wason, deceased." This amount is correctly ascertained and stated by the auditor; but the appellant's exception to the account rests upon the fact, that on the 2d day of May, 1867, Wason, the purchaser, gave to the appellee three promissory notes of that date, viz: one for $1,000, payable on the 1st day of October, 1867, signed by himself and John W. Stouffer; one for $1,500, payable on the 1st day of January, 1868, signed by himself and John Kendall, and one for $449.38, signed by himself, payable on the 1st day of February, 1868, and on the same day the appellee gave to James Wason, the following receipt:

"Received May 2, 1867, from James Wason, $2,949.38, in full of payment due April 1st, 1867.

"$2,949.38 in notes.

"(Signed),          "R. T. HOLLYDAY."

"It is argued on the part of the appellant that this transaction operated as a waiver and extinguishment of the vendors' lien for so much of the purchase money, as was secured by these notes, and that the same ought to have been disallowed in the computation of the appellees claim for priority out of the fund in court, which has arisen from the sale of the same lands under a creditors' bill, against the heirs and personal representatives of James Wason, deceased. It further appears that no part of the money secured by the notes has been paid, they are in possession of the appellee and have been produced in court. The sale from the appellee to Wason, is evidenced by articles of agreement, the legal title has not been conveyed and remains in the appellee. In this state of facts there seems to be no authority which supports the appellant's position, that the vendor's lien was waived by taking the promissory notes." The Judge

further says, "in *Magruder v. Peter*, 11 G. & J., 218, it was held, that a reservation of the legal title in the contract of sale until the full payment of the purchase money, is a conclusive manifestation of the vendors intent, not to part with his lien, therefor, and that the lien in that case was not waived by taking notes with endorsers to secure the purchase money. But we need not go so far from home for the settled principles of the law that governs this case. Judge Allen, in *Yancy v. Mauck et al.*, 15 Gratt., 300, reviews the Virginia decisions on the subject and shows clearly and conclusively that where the vendor has not parted with his title, he has not surrendered his lien while any part of the purchase money remains unpaid. That, to my mind, was a much stronger case against the vendee than this. In that case Robert L. Yancey had sold his interest in a tract of land to Robert C. Mauck, for which Mauck bound himself to pay Yancey $1,000; $500 was to be paid on the 20th of April, 1851, and $500 on the 20th of April, 1852. And Yancey bound himself to convey the same with general warranty when the first payment was made. At the same time Mauck purchased the interest of another of the heirs in the land, and upon the same terms; and afterwards he purchased a third interest. It also appeared that Zebulon Shafer had married one of the children of Leyton Yancey, and had sold his interest in some of the lands owned by his wife to Robert L. Yancey, and that $1,000 of the purchase money fell due about the 1st of October, 1850. This money Yancey wished to pay; and Mauck applied to Shafer to know if he wanted the money immediately, and being told he did not, Mauck proposed to give his bond for the amount. This Shafer agreed to, but required security, and, although Mauck declined to give the security at the time, at the November term of the county court, in 1850, he executed his bond, with Yancey as his surety, for $1,010, that being the amount of principal, and interest due from Yancey to Shafer to the 1st of December, when the bond was made payable.

1877.
January Term.

Dunlap's ex'rs.
et al.
v.
Shanklin ex'r.
et al.

1877.
January Term.

Dunlap's ex'rs.
et al.
v.
Shanklin ex'r.
et al.

Upon Mauck's executing this bond to Shafer, Yancey delivered up to him his two bonds for $500 each, which Mauck had given to him for the purchase money of the land, and they were destroyed. Some time after this, Yancey spoke to Mauck about his making a deed for his share of the land, saying he had fixed a time to do so, but was disappointed in it; when Mauck replied that it was immaterial to him when he made it, as he had no deeds tor the other interests, and Yancey could take his own time to make it. Nothing further was said on the subject between them, and the deed was not made. In 1855 Mauck became embarassed in his circumstances and in April of that year, he conveyed the land he had purchased from Yancey with other property, to John C. Woodson in trust, to secure Allen C. Bryan and Franklin Pence, as his securities. This deed described the land as having been conveyed to Mauck by Yancey, and the deed is duly recorded in the clerk's office of the county court of Rockingham. The suit was brought by Yancey against Mauck, and the other parties who claimed to have liens thereon, to subject it to the payment of the purchase money. Yancey had been sued with Mauck by Shafer and judgment had against them, which Yancey was compelled to pay, Mauck being insolvent. It was contended that the vendors lien had been extinguished.

In that case Judge Allen says, "a purchaser or incumbrancer ot a mere equitable title, must take the place of the person from whom he purchases. The vendor may resort to the estate whether a purchaser of the mere equitable estate from his vendee, purchased with or without notice. For want of notice or the payment of a valuable consideration, cannot place him in a more advantageous position than his vendor. As between the vendor and vendee, the latter occupies the position of a tenant at suffrance to the former. The vendor may assert his legal title and recover possession of the premises by ejectment, and so disaffirm the executory agreement to sell, or if he elects to go into chancery, the proceeding is more cor-

1877.
January Term

Dunlap's ex'rs.
et al.
v.
Shanklin ex'r.
et al.

rectly a bill for the specific execution of the contract, by requiring the vendee to complete his purchase by paying the price, or otherwise have the subject sold at his risk, than a bill to subject the property to a mere equitable lien. That a vendor retaining the legal title occupies a position different from and higher than one who has parted with the legal title and relies on the mere implied equitable lien, is not only clear from the consideration aforesaid, but is shown by the authorities." Judge Allen also reviews *Hatcher's adm'x v. Hatcher's ex'rs*, where the purchaser gave bond with security for the purchase money, but received no conveyance, and it was decided that the rights of the vendor to resort to the land was not lost by having taken personal security. And upon the same principle it was held in *Lewis v. Capertons ex'r*, 8 Gratt., 148, that a vendor retaining the legal title may resort to the land as against creditors and incumbrancers of the vendee, although the vendee had subsequently executed a deed by which he conveyed other property to secure the purchase money. The Judge further says, that "the distinction between the implied lien where the legal title is parted with and the right of the vendor who has retained the title, to enforce a specific execution, is clearly drawn in the cases of *Brush v. Knisly* and *Adams v. Stillwell*, 14 Ohio R., 20," the Judge says, "the lien of the vendor results from the fact that equity holds the vendee clothed with the legal title a trustee of the vendor for the payment of the purchase money. Before the legal title pases from the vendor on a contract for a sale of land there is no such lien. The vendors remedy in such case is, on the contract, either to enforce a specific performance of the contract or in an action at law. The vendee cannot compel a relinquishment of the legal title until he clothes himself with equity by the payment of the purchase money." After reviewing the decisions in Virginia, as well as a number of others, Judge Allen further says: " An application of these principles to the facts of the case under consideration, leaves no doubt in

1877.
January Term.

Dunlap's ex'rs.
et al.
v
Shanklin ex'r.
et al.

my mind of the rights of the appellant to resort to the land in controversy for satisfaction.

The contract of sale was executory, the appellant bound himself to make a deed to the appellee, R. C. Mauck, when the first payment was made. Before the bonds for the purchase money fell due an arrangement was made by which the vendee with his vendor, the appellant as security, executed their bond to a creditor of the vendor, for the amount of the purchase money, for which amount the creditor gave the appellant credit, and the bonds executed by the vendee were surrendered. The effect of the arrangement was the same as if the appellant had assigned his vendee's bonds for the purchase money in discharge of a debt, continuing responsible as assignee, or as if he had given to his creditor in discharge of his own debt, an order on his vendee for the amount of the purchase money and which the vendee had accepted. These arrangements did not change the character of the debt, it still consisted of the purchase money due for the land. Whether it should be paid to the vendor directly or to a third person for his relief, and the discharge of his debt did not change the nature of the consideration. The vendee becoming embarrassed executed a deed of trust upon this with other property to secure some of his creditors, and failing to pay the substituted bond executed for the purchase money, his security the appellant, was compelled to pay it. The arrangement to the extent of the failure to pay fell through. The purchase money was not paid, the vendor did not obtain relief from his debt. He was compelled to pay it, nominally, as the security of the vendee, in reality, because it was originally his own debt, which his vendee had bound himself to pay out of the purchase money due to him. Whatever might be the position he occupied at law, in equity which regards substance and not form he stood as the unpaid vendor retaining the legal title." In *Watts v. Kinney*, 3 Leigh, 272, cited by Judge Allen, the president of the court says: "That

1877.
January Term.

Dunlap's ex'rs
et al.
v.
Shanklin, ex'r,
et al.

a court of equity looks not to form but substance, that it looks to the *debt* which is to be paid and not to the *hand* that may happen to hold it, that the fund charged with its payment shall be so applied whoever may by the person entitled and that it considers a debt as never discharged until it is discharged by payment to the proper person and by the proper person."

In this case who was the proper person to pay the purchase money of the one-third interest sold to Thos. S. Campbell? Surely Thos. S. Campbell himself. Who was the proper person to whom the payment should have been made? R. V. Shanklin, executor, who had sold the property to him. We have seen that the purchase money has not been paid to him, and that he is the vendor still retaining the legal title. The claim that the lien for his purchase money was extinguished by accepting an assignment of the Crump bonds, cannot be maintained. His receipt was not *prima facie* even, that he had accepted these bonds as absolute payment. Clearly, by every principle of law, the executor of Alexander Dunlap, deceased, is entitled to have his purchase money out of said one-third interest, before any one else receives anything.

There is no fraud charged or proved against him. He seems to have acted fairly in the transaction throughout. There is nothing in the pretension that I. H. Campbell, administrator, was induced to expend money on the property, in the belief that the purchase money had been paid. I. H. Campbell was one of the assignees of the Crump bonds, and was liable to help make them good, if they proved worthless; he was also a party to the contract of 1859. If the new company was formed on the strength of the belief that the purchase money was paid by the bonds, which does not very clearly appear from the record, as the new company was formed on the day the receipt was given, yet that fact could in no way effect the rights of R. V. Shanklin, executor. They knew that he retained the legal title; there is no evi-

1877.
January Term.

Dunlap's ex'rs
et al.
v.
Shanklin, ex'r,
et al.

dence that it was ever demanded of him, and for the best of reasons that Thos. S. Campbell, not having paid the purchase money, was in no condition to demand the title of him, and no law could compel him to part with the legal title until the purchase money was paid. Shanklin cannot, as claimed by the appellants, be placed upon a common footing with other creditors. He has a higher and better position than they. As to them, the authorities show that they must abide by the condition of their debtor. *Yancey v. Mauck* 15 Gratt.

In every aspect of the case we think that Shanklin, as the executor of Alexander Dunlap, deceased, is entitled to the purchase money, as reported by the commissioner, and, therefore, there is no error in the decree of the circuit court of Monroe county, rendered on the 23d day of May, 1873, and the same is affirmed with $30.00 damages and costs.

DECREE AFFIRMED.