# WHEELING.

Hess, Adm'r of Chesney, v. Dille, Trustee, et als.

Submitted June 12, 1883—Decided December 8, 1883.

1. The giving of a new note for a previous one which had become due will not be regarded as a payment of the pre-existing debt, unless the parties so expressly agree. Nor will the surrender of the old note in such case, of itself, raise a presumption of such agreement, especially where the creditor would thereby lose some security which he held for the debt. (p. 96.)

2. Where the new note is that of a third person not previously bound for the debt, the taking of such new note and the surrender of the old will be treated *prima facie* as a discharge of the old note and a release of the maker thereof from personal liability, but where the debt is a lien on land of which the maker of the new note has become the purchaser and as a part of the consideration therefor assumed to pay said debt, such new note given by such purchaser and surrender of the old note will not extinguish the lien on the land or be regarded as a payment of the debt, but will discharge the old note and operate *prima facie* as a release of the makers of the old note from responsibility for the debt. (p. 97.)

Snyder, Judge, furnishes the following statement of the case:

Suit in equity brought, November 14, 1879, in the circuit court of Monongalia county by Alex. T. Hess, administrator of William Chesney, deceased, against John A. Dille, O. H. Dille, trustee, Josephus S. Brookover and Mary E., his wife, and Martin V. C. Brookover. The material allegations of the plaintiffs' bill are, that George C. Shafer, being the owner of a tract of forty-five acres of land lying in said county, by deed, dated November 2, 1873, conveyed said land to John H. Hoffman, trustee, to secure the payment or a note executed by him on that day to William Chesney for one thousand and eighty dollars payable one year after date, which deed was duly recorded on the day of its date; that subsequently, the said Shafer and wife by deed, dated October 3, 1874, and duly recorded October 13, 1875, conveyed said land to Martin V. C. Brookover in consideration of one thousand seven hundred dollars; and expressly stipulated in

said deed that one thousand dollars thereof was to be paid by the vendee to William Chesney in discharge of the debt secured to said Chesney by the said trust-deed of November 2, 1873, given by said Shafer to Hoffman, trustee, and a vendor's lien was retained in said deed to secure the payment of the whole purchase-money including the said one thousand dollars to Chesney; that, after the said Martin V. C. Brookover had purchased said land from Shafer, by an arrangement between him and his brother, the defendant, Josephus S. Brookover, the latter acting for his wife, the defendant Mary E., the said Josephus S. went to said Chesney and informed him that his wife, the said Mary E., was about to purchase said land from said Martin V. C. and that to effect said purchase the said Mary E. wanted to take up said Shafer note and give her note for one thousand dollars in lieu thereor at eight per cent. interest, and that said trust and vendor's lien for said debt should still bind the land in her hands; that accordingly, on February 1, 1865, the said Mary E. did execute to said Chesney her note for said debt of one thousand dollars, payable on or before December 1, 1879, with interest at eight per cent. from date, and that it was then and there expressly agreed that said trust and vendor's lien should remain in force as security for said one thousand dollars and a further . vendor's lien therefor was to be retained in the deed to be made by said Martin V. C. to said Mary E. for said land; that the said Mary E. did at or before that time purchase said land and was then the owner thereof, but afterwards, without the knowledge of said Chesney, the said Martin V. C., fraudulently colluding with said Mary E., conveyed said land to her by deed, dated September 14, 1875, acknowledging therein the full payment of the consideration of one thousand nine hundred dollars and without retaining any lien for said one thousand dollars due to Chesney; that the said deed was acknowledged October 14, 1875, and recorded January 4, 1877; that the said Mary E. and her husband by deed, dated December 27, 1876, conveyed said land to O. H. Dille, trustee, to secure the payment of a note of same date for nine hundred dollars given by said Mary E. to John A. Dille payable April 1, 1878, which deed was also duly recorded; that the said Chesney died October 6, 1876,

and the plaintiff on the 21st day of said month qualified as his administrator; that the note to defendant John A. Dille having become due, he caused the trustee in said trust deed of December 27, 1876, to advertise the said land for sale and that the same will be sold unless the sale is enjoined. The plaintiff charges that, with the exception of eighty dollars paid on said Shafer debt which was credited by an endorsement on the note and signed by said Chesney, no part of said debt has ever been paid; that the said one thousand dollars, the remainder of said debt is still due and constitutes a valid and subsisting lien on said forty-five acres of land not only by virtue of said trust-deed of November 2, 1873, but also by reason of the vendor's lien retained for its payment by said Shafer in the deed of October 3, 1874, to said Martin V. C. Brookover, and that said lien has never, in any manner, been released or discharged, and that said John A. Dille had notice thereof before and at the time the aforesaid trust-deed was given to secure him. He then prays that the sale of said land by said Dille may be enjoined, that the lien for said debt of one thousand dollars to his intestate may be decreed to have priority over the lien of said Dille, and for general relief.

The bill was sworn to, and on November 11, 1879, the plaintiff obtained from the judge of said circuit court an injunction as prayed for in his bill.

The defendants, Brookover, answered the bill claiming that said Chesney had transferred and assigned said Shafer's note to Mary E., and that she had transferred it to Martin V. C. who is the owner of it and entitled to the benefit of the lien by which it is secured. But as there is no evidence in the cause to support this claim, and the said Martin V. C. having refused to file said note or testify in the cause, it is unnecessary to make any further reference to said answers.

The defendant, John A. Dille, states in his answer that before he took the trust-deed of December 27, 1876, he examined the records of Monongalia county and found there recorded the trust-deed of November 2, 1873, to secure said Shafer debt and also the deed from Shafer to Martin V. C. Brookover, in which the vendor's lien is retained for said debt; that then to satisfy him said debt had been discharged,

the defendant Martin V. C. produced to him the original Shafer note with the endorsements thereon of which he then took a copy. This copy he exhibits with his answer, and it is as follows:

"$1,080.                    "MORGANTOWN, W. Va., Nov. 2, 1873.

"Twelve months after date, I promise to pay William Chesney or order one thousand and eighty dollars for value received.                                   "G. C. SHAFER."

The endorsements thereon are as follows:

"Nov. 20, 1874, eighty dollars paid.

                                   "WILLIAM CHESNEY."

"Received payment in full of said deed of trust this the 16th day of September, 1875.

                                   "J. S. BROOKOVER."

The said Dille further states in his answer, that before he took said trust-deed he had frequent conversations with the plaintiff, Hess, and told him what he was about to do and asked him the value of said land; that finding the original note in the hands of Martin V. C. Brookover who was to pay it off, "everything seemed to be regular except the release of Chesney, and he being dead and being assured by his administrator that he knew of no claim of the estate against said land," he took said trust-deed; that in doing so he acted in entire good faith and did not for a moment suppose that the estate of said Chesney had any claim, secret or otherwise, against said land. He denies that there was any agreement between Chesney and Mrs. Brookover that her said note was to be substituted for said Shafer note, and that it was agreed and intended that the said Chesney should have a lien therefor under either the Shafer trust or the deed from Shafer to Martin V. C. Brookover, but even if there had been such agreement he denies it would be binding on him. He prays that the injunction be dissolved and the plaintiff's bill dismissed. To this as well as all the other answers there was a general and also a special replication. The special replications were improperly filed and therefore need not be noticed—*Jackson* v. *Hull*, 21 W. Va. 601, 611.

The cause was heard on June 20, 1881, upon the pleadings and proofs, and thereupon the court decreed that there was

no lien on the said forty-five acres of land for the debt due the intestate, that the debt of the defendant John A. Dille, secured in the trust-deed of December 27, 1876, was paramount and entitled to be paid in preference to the debt of said intestate, and ordered a sale of the land to pay the debt of said Dille. The plaintiff then appealed to this Court.

*P. H. Keck* for appellant.

*A. F. Haymond* for appellee.

SNYDER, JUDGE:

George C. Shafer by his trust-deed of November 2, 1873, specificially charged the said forty-five acres of land as security for the debt of one thousand and eighty dollars due from him to William Chesney, and by the subsequent conveyance of the land to Martin V. C. Brookover, the said Martin V. C. was by the terms of the deed to him made liable for one thousand dollars, the unpaid part of said debt and a vendor's lien expressly retained to pay the said one thousand dollars. By this stipulation in the deed the said Martin V. C. became primarily responsible to Chesney for said debt and the land in his hands was specifically and expressly charged with its payment. The debt was in fact, as between Shafer and said Martin V. C. the debt of the latter with the former merely as security for him to Chesney. The debt being thus due from the said Martin V. C. and its payment charged upon his land, he then entered into an arrangement with Mary E. Brookover to sell her said land and as a part of this arrangement the said Mary E. was to satisfy or assume the payment of said one thousand dollars to Chesney and have a credit for the same on the purchase-money agreed to be paid by her to said Martin V. C. for said land. In pursuance of this arrangment, on February 1, 1875, she executed to Chesney her note for one thousand dollars and he surrendered to her said Shafer note. If the said Mary E. had not actually purchased said forty-five acres of land at the time she gave Chesney her note, the agreement for the purchase had then been made and the giving of said note and obtaining from Chesney the Shafer note was a part of the agreement made to effect said

purchase. The facts and circumstances disclosed by the record leave no doubt on my mind that the intent and purpose of all the parties, the said Martin V. C., Mary E. and Chesney, were that the said Mary E. should become the purchaser of said land and as a part of the consideration of said purchase she was to assume the payment of said debt to Chesney which was a lien on the land and release the said Martin V. C. from liability on account of said debt. That the said Mary E. was to make said debt her own; and that it was with this intent and purpose that she substituted her note for the said Shafer note. This seems to be conceded by the counsel for the appellee, John A. Dille, for he says in his brief, " doubtless when Mrs. Brookover gave her own note for the Shafer note it was in contemplation of the purchase of said land, and it is more than likely that the contract and arrangement with said Martin V. C. was made between the 1st February, 1875, when she got the Shafer note of Chesney and the date of the deed." I do not think there is any room for controversy as to this fact. The giving of her note to Chesney for the Shafer note and the purchase of the land by Mrs. Brookover were parts of one and the same transaction. The completion of one act depended on the accomplisment of the other. If, therefore, the giving of the new note by the said Mary E. was in contemplation of and dependent upon the purchase of the forty-five acres of land by her, as we think the facts fully establish, it is entirely immaterial whether or not the two parts of the act were in fact perfected at the same time: The essential matter is, did they exist at the same time? If she gave the note in contemplation of and with the understanding that she was to purchase the land, then the subsequent purchase by Mrs. Brookover was in effect the same as if the two acts, the purchase and the giving of the note, had occurred at the same moment. The effect of the transaction was, then, that Mrs. Brookover by giving her note and taking up the Shafer note accomplished the purchase of the land; that is, her purchase of the land either before or subsequent to that time by relation operated as a purchase at the date she gave the note. The fact that the deed bears a subsequent date does not prove that the purchase was not made before its date; but even if the pur-

chase had not been perfected until the date of the deed, still the note having been given in contemplation and upon the faith of the purchase, the subsequent purchase, so far as the act affected Chesney and the note given upon the condition of the purchase, had relation to and took effect from the time the new note was given and the old note surrendered. It may be remarked here, that there is no evidence in the record to show when the Shafer note was in fact surrendered to Mrs. Brookover by Chesney. It may not have been surrendered until after the deed from Martin V. C. was made to said Mary E., or at the time the endorsement of September 16, 1875, was made on it by J. S. Brookover, the husband of said Mary E.

In this view, which, we think, is not only conceded by the counsel for the appellee, but fully sustained by the facts, the said Mary E. was, at the time she gave Chesney her note, the equitable owner of said forty-five acres of land and subsequently became the legal owner by a conveyance of the legal title to her from said Martin V. C., that said note was given for a debt of one thousand dollars due to Chesney, which was an express lien on said land, and she obtained credit on her purchase from the said Martin V. C. for the full amount of the debt she thus assumed to pay Chesney. She made the Shafer debt, for which her vendor, the said Martin V. C., had made himself primarily responsible, her own debt. She became the owner of the land on which said debt was charged as an express lien, and the payer of said debt at the same time. It is not claimed that there was any express agreement that Chesney was to release his lien on said land, or that said lien was in fact released. On the contrary, the record shows that the lien was not in fact released. Now, excluding the parol testimony by which it was attempted to prove that it was expressly agreed the lien of Chesney should remain in force to secure the note of said Mary E., let us determine whether or not, as between Chesney and the said Mary E., the mere act of substituting the note of said Mary E. for said Shafer note, without the release of the lien or any express agreement to release it, operated in law as a release of Chesney's lien on the land for said debt?

The doctrine is well settled both in Virginia and this

State, that the giving of a new note for a previous one which had become due, will not be regarded as an absolute extinguishment or payment of the precedent note or pre-existing debt, *unless it be so expressly agreed*, whether the new note was that of one previously bound or of a stranger—*Dunlap* v. *Shanklin*, 10 W. Va. 662; *Feamster* v. *Withrow*, 12 *Id.* 611; *Bantz* v. *Basnett, Id.* 772; *Bank* v. *Goode*, 21 *Id.* 455, 465 and cases there cited.

Nor will the surrender of the old note, of itself, raise a presumption of an agreement to extinguish the debt by the giving of the new note; and especially will no such presumption arise where the creditor would thereby lose some security which he held when he took the new note—*Bank* v. *Good, supra*; 2 Dan. on Neg. Inst. §§ 1266, 1267.

Where the new note is that of a third person, the surrender of the old note will be held to be *prima facie* a discharge of the old note and a release of the maker of such old note from personal liability for the debt; but where, in a case like the one under consideration, the holder of the old note had a specific lien on land as security for the debt and by an arrangement between the maker of the old and the maker of the new note, the said land becomes the property of the latter, who at the same time agrees to assume said debt as a part of the consideration for the land, the execution of a new note for said debt will not operate an extinguishment of said debt unless it is so expressly agreed. By this arrangement the maker of the new note became the real debtor and was bound to pay it before the new note was given. The giving of the new note was not then in fact the giving of a note by a third party or stranger, but merely the giving of a note by a party already bound for the debt and in no respect, except in form, differs from the case of a debtor giving a new note in renewal of a note previously given by him. And, as we have seen, the authorities are uniform that the debt in the latter case would not be extinguished even when the previous note was surrendered unless it was so expressly agreed. Much less would it operate as a release of the security held by the creditor for such debt. I am, therefore, of the opinion that the giving of the new note by Mrs. Brookover and the surrender of the Shafer note by Chesney to her and her de-

livery of it to Martin V. C. Brookover, who really owed and was bound to pay it, operated as an extinguishment of said note and a release of Shafer and said Martin V. C. from all liability to Chesney for said debt; but inasmuch as Mrs. Brookover had assumed to pay said debt and had become the owner of the land on which it operated as a lien and was a part of the purchase-money therefor, the giving of her note for said debt did not extinguish the debt or release the lien of the land, no express agreement to that effect having been shown, and it appearing affirmatively that the lien was not in fact released. As between her and Chesney the debt continued as a lien on the land after the new note was given by her. The next enquiry is, does the appellee, John A. Dille, as a subsequent purchaser of the land, occupy any higher position than Mary E. did prior to her deed to him?

Dille admits that he examined the records and found the trust-deed and vendor's lien on the land to secure the payment of said debt properly recorded. But whether he did so or not is immaterial, because the law conclusively charges him with notice of said recorded liens. After finding these liens recorded and also that a deed had been made by said Martin V. C. to Mary E. Brookover, he testifies, that he was "informed by said Mary E. or her husband that said trust of Chesney had been paid off and discharged, and that the note of said Shafer to Chesney was in the hands of said Martin V. C. Brookover; that afterwards, on December 4, 1876, the said Martin V. C. exhibited to him what purported to be said Shafer note with certain endorsements thereon of which he then took a copy." The said copy is the same referred to in the answer of said Dille and has been hereinbefore given. He further testifies, that some days after this he informed the plaintiff as administrator of said Chesney that he was about to take a deed of trust upon the forty-five acres of land and that the Brookovers claimed that said Shafer note had been discharged by Mrs. Mary E. Brookover giving her note for the debt, and that the plaintiff replied, "I expect it is true that Mr. Chesney took Mrs. Brookover's note in place of the Shafer note for," he said, "I found among the papers of said Chesney Mrs. Brookover's note to said Chesney for one thousand dollars payable some time in the year 1879."

And being asked whether he considered said land good security for nine hundred dollars, the plaintiff answered he did and asked Dille to arrange to secure a note for a small amount due to his, plaintiff's, son against Mrs. Brookover which Dille agreed to do and did for plaintiff. In regard to this conversation the plaintiff testifies: "I told him (Dille) that we claimed that the original deed of trust was good for said Mary E. Brookover note; * * * that he said, we had released the Shafer deed of trust to Chesney and taken Mrs. Brookover's note in lieu of our Shafer deed of trust note. I told him we had never released it nor made any deed of release." Plaintiff further says, that he never told said Dille or any one else that the trust-lien was in any way released or discharged from the payment of said debt. He admits that his son's debt was secured in the Dille trust-deed and afterwards paid by Dille.

From this testimony it is apparent that the plaintiff did nothing to estop him from asserting the Chesney debt and lien on the land against the appellee, Dille. In fact he did nothing that could in any manner have misled Dille. The plaintiff and Dille had the same information about the condition of the Chesney debt, they both knew that Mrs. Brookover's note was given for the Shafer debt in part payment for the forty-five acres of land and that neither the Shafer trust-deed nor the Martin V. C. Brookover vendor's lien had ever been released. The only question then was one of law as to whether the transaction between Chesney and the Brookovers operated in law as a discharge of the Chesney lien on the land. Of this Dille was as capable of judging as the plaintiff. Dille no doubt was of opinion that said transaction did operate as a release of said lien and acted accordingly. In this we think he was mistaken. He was informed of all the facts and with that knowledge he took his conveyance from Mrs. Brookover. His erroneous declaration of the legal effect of said facts cannot afford him any protection. Where the facts are known ignorance of the legal consequences which flow from those facts, will not confer the character of a *bona fide* purchaser without notice. Consequently, the appellee, Dille, having taken his trust-deed with notice of facts, which showed the infirmity of his ven-

dor's title, he can occupy no higer ground than Mrs. Brook-over, and having held that her title was subject to the lien of the Chesney debt, the lien of his trust-deed must also be held to be subject to said Chesney debt. For the foregoing reasons the decree of the circuit court must be reversed with costs to the appellant against the appellees, John A. Dille, Mary E. Brookover and Martin V. C. Brookover; and the cause is remanded to the circuit court for further proceedings there to be had according to the principles announced in this opinion.

REVERSED AND REMANDED.