# CHARLESTON

LOWTHER *et al.* v. LOWTHER-KAUFMANN OIL & COAL CO. *et al.*

Submitted June 3, 1914.  Decided October 13, 1914.

1. CORPORATIONS—*Insolvency—Preference Rights.*

   The general creditors of a corporation whose property has been taken over by another one, in consideration of the assumption by it of the debts of the former, have an equitable right, on the insolvency of the latter, to preference in the distribution of the proceeds of the sale of the property derived from their original debtor, over the claims of the other general creditors of the purchasing corporation, and to have such property separately sold for the purpose of exact ascertainment of their rights, unless they have released the original debtor by complete novation of their debts or otherwise. (p. 174).

2. SAME—*Judgment—Insolvency—Renewal and Surrender of Notes—Merger in Judgment.*

   In such case, the renewal by the purchasing corporation of the notes of the other and surrender of the old notes by the creditors do not raise a presumption of satisfaction of the debts or discharge of the original debtor. Nor does an unsatisfied judgment against the purchasing corporation, on the renewal notes, extinguish the original debts by merger. (p. 177).

3. SAME—*Insolvency—Deed of Assignment.*

Nor does the execution by the purchasing corporation, of a deed of general assignment for the benefit of its creditors, extinguish such original debts, even though the owners thereof have not attacked its validity nor rejected the benefit of the provision made for them. (p. 178).

4. ASSIGNMENT FOR BENEFIT OF CREDITORS—*Equitable Rights in Fraud Assigned—Right to Enforce.*

In such case, the creditors of the selling corporation may assert their equitable right to payment out of the property derived from it, under the deed of assignment, even though it fails to recognize such right, and also under a clause thereof providing, in general terms, for preference and priorities obtained under the laws of the state, prior to the date of the deed. (p. 179).

5. CORPORATIONS—*Actions Against—Necessary Parties.*

Such right may be asserted in a creditors' suit against the purchasing corporation, and, if the other corporation has disposed of all of its property, dissolved and surrendered its charter, it is not a necessary party to the suit. (p. 180).

6. SAME—*Actions Against—Decree of Sale—Validity.*

A decree of sale of the property involved in such a suit, which denying such right of preference, gives debts of the old and new corporation an equal status and orders sale of the property as a whole, is erroneous for denial of the right of preference and also for direction of sale, without proper adjustment of liens as to priority. (p. 181).

7. APPEAL AND ERROR—*Reversal in Part.*

But, if sale had ben made under such decree and confirmed without objection, before the appeal therefrom was taken, so much of it as directed the sale will not be reversed. On the contrary, such part of. it and the decree of confirmation will be affirmed, and the decree under which the sale was made will be reversed only in so far as it denied the right of preference and modified the commissioner's report, in respect to the rank and dignity of the liens, to the prejudice of appellant. (p. 181).

8. JUDICIAL SALES—*Title of Purchaser—Decree of Sale—Validity.*

Except under peculiar and anomalous circumstances, such as nullity of the decree, purchase by a substantial party to the suit or omission of persons as parties, interested in the property as lienors or otherwise, the title of a purchaser at a judicial sale is not affected by an error in the decree of sale. (p. 181).

Appeal from Circuit Court, Wetzel County.

Creditors' suit by C. Forest Lowther and others against the

Lowther-Kaufman Oil & Coal Company and others. From the decree, F. W. Clark appeals.

*Reversed in part.  Affirmed in part.  Remanded.*

*T. H. Jacobs* and *L. N. Tavener,* for appellant.

*E. H. Yost* and *Edwin O. Keifer,* for appellees.

POFFENBARGER, JUDGE:

Of a large number of individuals and corporations, who were interested in, and parties to, this suit brought to ascertain the rights of the creditors of the Lowther-Kaufmann Oil and Coal Co., an insolvent corporation, and make distribution of its assets, Frank Wells Clark, deeming himself to have been prejudiced by the final decree and other orders in the cause, has appealed.

Clark was an endorser of numerous notes of the corporation, amounting in the aggregate to about $36,000.00, and had been compelled to pay $15,000.00 of that amount, on a judgment recovered thereon against him, the maker of the notes and other endorsers, in favor of the holder, The First National Bank of New Martinsville. ' The decree substituted him to the rights of the bank to the extent of his payments on said judgment, wherefore he is largely interested in all questions pertaining to the indebtedness of the corporation and the priorities of the liens on its property.

Before the commissioner to whom the cause was referred to take and report an account, he successfully resisted the claims represented by several notes executed by the corporation to certain of its stockholders, one for $7650.00, payable to C. F. Lowther, or order, held by The National Exchange Bank; one for $1500.00, payable to W. R. Fitch, or order, held by J. W. Fitch; one for $750.00, payable to Annie L. Fitch, or order, held by J. W. Fitch; one for $1000.00, payable to F. W. Clark, or order; one for $4650.00, payable to J. W. Kaufmann, or order, held by the Dollar Savings & Trust Co.; one for $1800.00, payable to Brent Shriver, or order, held by the Mound City Bank; and one for $1500.00, payable to Caroline A. Lowther, or order. All of them were executed, in consideration of money loaned or advanced by the parties

to whom they were made payable. The court, however, sustaining exceptions to the report of the commissioner, allowed all these claims and declared them to be of equal rank and dignity with the claims due to the First National Bank of New Martinsville and some others, including one in favor of the Bank of Middlebourne for $7052.78. These claims were resisted upon two grounds: (1) that they were not allowable at all as debts of the corporation, because, being nonnegotiable instruments, they were subject to the equitable defense of liability on the part of the payees of the notes for dividends received by them in violation of a by-law of the corporation and of the statute; and (2) that, if liens at all, they were inferior, in dignity and priority, to the claims of the First National Bank of New Martinsville and the Bank of Middlebourne.

A brief history of transactions antedating and following the execution of the contested notes and contemporaneous therewith is essential to an accurate understanding of the contentions of the appellant. The Lowther-Kaufmann Oil & Coal Co., is, in some sense, the successor of two previous concerns, The Lowther Oil Co., a corporation organized in the year 1900, and the Enterprise Oil, Gas and Drilling Co., a copartnership, composed of C. F. Lowther, W. R. Fitch and C. A. Lowther. On the 14th day of February 1905, the stockholders of the Lowther Oil Company adopted resolutions for the conveyance of all of its property to the Lowther-Kaufmann Oil & Coal Co., then organized or about to be organized, and composed almost entirely of persons as stockholders, who were stockholders in the Lowther Oil Co. At the same meeting at which the new corporation adopted resolutions to take over the Lowther Oil Co. property, February 13, 1905, it also provided for taking over the assets of The Enterprise Oil, Gas and Drilling Company, a co-partnership, composed of C. F. Lowther, W. R. Fitch and C. A. Lowther.

In the resolution authorizing the conveyance of the property and assets of the Lowther Oil Co. to the Lowther-Kaufmann Oil and Coal Co., and the deed by which the actual conveyance was made, no express provision was made for the payment of the indebtedness of the former company. Nor

was there any recital of the assumption of the indebtedness of the Enterprise Oil, Gas and Drilling Co., as consideration for the conveyance from it of a number of oil leases and personal property, having a recited value of $24,699.00. Each of the deeds recited, as the consideration thereof, $1.00 and other good and valuable considerations. The basis of the purchase seems to be that set forth in a resolution adopted by the stockholders of the Lowther Oil Co., which was as follows: The assets of the Lowther Oil Co. were to be taken over at a valuation of $450,000.00 and those of the Enterprise Oil, Gas and Drilling Co. at a valuation of $100,000.00, and the Lowther-Kauffmann Oil and Coal Co. was to issue its stock to the amount of $800,000.00, nine-elevenths of which was to go to the stockholders of the Lowther Oil Co. and two-elevenths to the members of the co-partnership; the Enterprise Oil, Gas and Drilling Co., as consideration for the properties to be conveyed. But the new corporation, in accepting the propositions of the other concerns, expressly assumed the payment of their indebtedness.

It would be difficult to ascertain from the record just what the indebtedness of the Lowther Oil Co. was, at the date of the conveyance, but it was large, both actually and relatively. The commissioner estimated that in January, 1904, it was $78,205.66. The indebtedness of the Enterprise Oil, Gas and Drilling Co. seems to have been about $10,000.00, though there is some controversy as to what the actual amount was. The Lowther-Kaufmann Oil and Coal Co. paid to and for the drilling company considerably more than that, but these payments included a $5000.00 note which seems to have been an obligation of one of the other companies, which the Drilling Co. paid.

The debt to the First National Bank of New Martinsville for which it acquired a judgment and that of the Bank of Middlebourne were originally debts made by the Lowther Oil Co., which the new corporation, the Lowther-Kaufmann Oil and Coal Co., never paid. All of the debts of the Enterprise Oil, Gas and Drilling Co. seem to have been paid.

Assuming the existence of the liability of the Lowther-Kaufmann Company for the unpaid indebtedness of the

Lowther Company, without novation, the appellant insists upon his right to have the property which formerly belonged to the latter company applied to the payment of such indebtedness. He also claims the right to extinguish the notes above mentioned, in so far as they stand in the way of the indebtedness for which he is liable as an endorser and subrogee, by setting off against them alleged liability of the payees thereof for dividends of the Lowther Oil Co., wrongfully and without authority declared and paid to them.

Notwithstanding the heavy indebtedness of the Lowther Oil Co., in January, 1904, practically all of which must have continued until that company quit business, large dividends were declared. From May 20th 1904, until February 15th 1905, they amounted to $42,900.00. Entries in the minute book show declarations of previous dividends amounting to about $10,000.00.

The mere taking over of the Lowther Company assets by the Lowther-Kaufmann Company, without consideration would have left them subject, in the hands of the latter, to the debts of the former, for the transfer would have been a voluntary one. The assumption of the debts, in consideration of the conveyance of the property relieved the transaction from this infirmity and made the new corporation liable for the debts of the old one. The contract thus became one between the two corporations for the benefit of third parties who had the statutory, if not the common law, right to sue on it. Code ch. 71, Sec. 2; *Nutter* v. *Sydenstricker*, 11 W. Va. 536; *Lydick* v. *Railroad Co.*, 17 W. Va. 448.

Whether the creditors of the old corporation, being thus provided for, lost their right to follow up and subject to the payment of their debts, the property of their original debtor, in the hands of the purchaser, is the crucial question upon which the issue of priority turns. They could unless there was a novation, a new contract, by which the creditor released the original debtor and agreed to look to the new corporation alone for payment. Noyes, Inter. Corp. Rel. secs. 86, 88; 2 Mor. Priv. Corp. sec. 957; 4 Thomp. Corp. sec. 4925; *Billmyer Lumber Co.* v. *Merchants Coal Co.*, 66 W. Va. 696. The general creditors of the Lowther company had no lien on its

property, as against judgment, execution and other lien creditors, or subsequent bona fide purchasers, of course, but no claims of such creditors or purchasers are in dispute in this cause. The properties of the two corporations are before the court and also the two sets of general creditors, and the inquiry is whether these creditors, treated as general creditors, have and shall be accorded equitable rights against the properties, and the authorities cited affirm such right. As to the assets of the old corporation, its creditors are clearly entitled to preference, unless that corporation has been released from its obligations by the entry of its creditors into new contracts, binding them to look to the new corporation alone for payment.

No claim of such release by express contract is asserted. The contention is that it necessarily arises, by inference or implication, out of certain transactions, the renewal of the Lowther company notes by the Lowther-Kaufman Company, and possible surrender of the old notes, the acquisition of a judgment against the Lowther-Kaufmann Company on the renewal notes and the acceptance of the benefit of a general assignment for the protection of creditors, made by the Lowther-Kaufmann Company. That the old debts were not extinguished by the renewal of the notes by a third party and surrender of the old ones, assuming them to have been surrendered, is well settled by authority. *Bank* v. *Good,* 21 W. Va. 455; *Hess* v. *Dille,* 23 W. Va. 90; *Cushwa* v. *Building Association,* 45 W. Va. 490; *Feamster* v. *Withrow,* 12 W. Va. 611; *Stephenson* v. *Rice,* 12 W. Va. 575; *Dunlap* v. *Shanklin,* 10 W. Va. 662; *Poole* v. *Rice,* 9 W. Va. 73. The giving of a new note and surrender of the old between the same parties raise no presumption of satisfaction. If a note of a stranger is taken for the debt and the original note surrendered, such a presumption does arise. *Hess* v. *Dille,* cited. But, if the stranger previously assumes the debt, in consideration of the conveyance to him of the property bound for it, there is no such presumption. *Hess* v. *Dille.* In that case, Judge SNYDER said: "By this arrangement the maker of the new note became the real debtor and was bound to pay it before the new note was given. The giving of the new note was not

then in fact the giving of anew note by a third party or stranger, but merely the giving of a note by a party already bound for the debt and in no respect, except in form, differs from the case of a debtor giving a new note in renewal of a note previously given by him.'' In that case, the debt assumed constituted a specific lien on the land purchased, while those involved here did not, but the negation of the presumption did not arise out of the character of the debt. It arose out of the previous assumption of the debt in payment or part payment of the purchase money of the property, and that fact is fully established here, the assumption of the debts of the old corporation being the only benefit it received from the conveyance of its property.

The word ''novation'' is not always used in its technical sense in the decisions and text books. In actions by creditors of constitutent corporations against consolidated ones, or against new corporations by creditors of old ones absorbed or extinguished by them, it is often used as meaning no more than that the new corporation is liable, and its use, in such cases, does not imply extinguishment of the original debt. Such is the meaning of the word as used in *Friedenwald Co.* v. *Ashville Tobacco, &c., Co.*, 23 S. E. 490 and *Railway Co.* v. *Johnson*, 56 S. E. 483, relied upon in the brief of appellees. Nothing more could have been decided, for the cases involved only that question. Whether the old debt was extinguished did not arise. Hence ''novation'' was not employed in its technical meaning.

As the new notes wrought no extinction of the old debts, the judgments subsequently taken on them were not founded on the original debts and, therefore, did not merge or extinguish them.

Nor did the acceptance of the benefit of the deed of assignment for the benefit of creditors extinguish them. The assignment was a voluntary and ex parte transaction, not intended to alter or in any way affect the rights and equities of creditors. They were not formal parties to it. By it, the debtor set over its property to the trustees for sale and distribution of the proceeds, according to the rights of creditors as fixed and determined by law. Such a deed is not like an

ordinary deed of trust. *Sandusky* v. *Farris,* 49 W. Va. 150.

Next it is contended, that this deed of trust converted all the general debts, including those of the two banks, into lien debts of equal dignity and that the previous equities of creditors of the old corporation cannot be allowed to destroy the status so created. This position is likewise untenable. If the deed of trust had not, in express terms, saved to creditors the benefit of preferences previously acquired, a trust fund received under it by the trustees would be available to the beneficiaries thereof. "The equitable right to follow a special deposit or trust fund into the hands of the assignee as being a claim superior to that of a general creditor under the assignment is recognized." 4 Cyc. 269, citing decisions of the courts of Iowa, Kansas, Missouri, New York, Texas, Wisconsin and the United States, fully sustaining the text, and showing the trusts so recognized need not be express or formal trusts, but only equitable claims founded upon justice and conscience.

These conclusions fully sustain the assignment of error in the final decree. The debts due the First National Bank of New Martinsville and the bank of Middlebourne, for which the appellant is liable as endorser, and the debt due said appellant on account of the money paid by him on the judgment in favor of the First National Bank of New Martinsville, were entitled to priority, as regards the property derived from the Lowther Oil Company, and the court, therefore, erred in sustaining the exception to the allowance of such preference by the commissioner, and in placing them on an equality with the other debts of the Lowther-Kaufmann Oil and Coal Company.

As to the sums decreed to the assignees and the payees of notes amounting to $17,850.00, the position of the appellant is untenable. He proposes to set off against these notes, executed by the new corporation, for money received and used in its business, liabilities for dividends wrongfully obtained by the payees from the old corporation. As a creditor of the new corporation, the bank cannot complain of the declaration and payment of dividends by the old one. As a creditor of the old one, it cannot consistently set off a liabil-

ity to the old one against the debt of the new one. Nor is the liability to refund dividends to the old company an asset of the new one. The deed did not convey it, nor has there been any assignment of it.

The allowance of $2300.00 to Caroline A. Lowther for the value of certain oil and gas tools, appliances and machinery, used by C. F. Lowther in drilling wells under a contract with the special receiver in the cause, and claimed by her, some of which were worn out in the work and the balance sold as part of the company property, is a subject of complaint from both sides. She complains because she was not allowed $4000.00 and the appellant denies her right to anything and her title to the property. On the question of title as well as the value of the property, the evidence is conflicting and both the commissioner and the trial court have found in her favor, the former $2800.00 which the latter reduced to $2300.00. Nothing is perceived in the evidence, justifying disturbance of the court's decree as to this claim.

No error is perceived in the failure to make the Lowther Oil Company a party. It has been dissolved and its charter surrendered. It has no property and no relief against it is possible. All of its property is before the court and belongs to the Lowther-Kaufmann Oil and Coal Co. subject to the rights of its unpaid creditors.

Another assignment of error charges the dismissal of a petition filed, Jany. 20, 1912, by the appellant, setting up liens in favor of the First National Bank of New Martinsville and the Bank of Middlebourne, upon certain intangible property evidenced by notes, certificates of stock and other similar papers, deposited by C. F. Lowther, J. W. Kaufmann and Brent Shriver with certain banks as collateral security, by virtue of executions issued on the judgments of the New Martinsville and Middlebourne banks, and praying subjection of the same to the satisfaction of said judgments. The petition has not been dismissed. It is still pending, but the court has properly directed the money collected on the collaterals to be paid on the debts for which they are held, until they are satisfied, and the balance to be held until the further order of the court.

This appeal was not taken until after the sale of the property to apparent strangers to the suit and confirmation thereof, without objection. Under such circumstances, a reversal of the decree of sale for the errors noted would not affect the purchaser's title. Code, ch. 132, sec. 8. But this statute is not of universal application. If the purchaser was a moving, active party to the suit, or the decree of sale was void, or persons interested in the property as lienors or otherwise were not parties to the suit, the title falls by reversal of the decree. *Dunfee* v. *Childs,* 45 W. Va. 155; *Hull* v. *Hull,* 26 W. Va. 30; *Pappenheimer* v. *Roberts,* 24 W. Va. 712. For other illustrative cases, see Justices Annolations, p. 922. As it does not always apply and seems, by its terms, to contemplate reversal of the decree, even though the purchaser's title is protected, the inquiry, as to its application in any particular case, would seem naturally to arise in the court below, after reversal and remand, but it has been the constant and uniform practice of this court, as well as others, to take up the question, on the record in the appeal, and dispose of it. The reports do not show a single instance of postponement or remittal of the inquiry to the trial court. Moreover, notwithstanding the terms of the statute, saying "though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby," the practice has been not to reverse the decree of sale or the decree of confirmation, but, on the contrary, to affirm both, notwithstanding the error. *Hughes & Co.* v. *Hamilton,* 19 W. Va. 366, syl. 15; *Beard* v. *Arbuckle,* 19 W. Va. 135; *Capehart* v. *Dowery,* 10 W. Va. 130.

The purchasers do not appear to have been parties to the suit and the decree is not void. The court had jurisdiction and merely erred. All persons having any interest in the property sold were before the court. The defunct Lowther Oil Company was not made a party and the failure to bring it in is complained of, but it had not the slightest interest in the property. What it had formerly held had been validly sold and conveyed, for a valuable consideration, the assumption of its debts, and the purchaser and sole owner was before the court as were all persons interested as lienors. No

decision has ever invalidated the purchaser's title for lack of a party, unless the omitted person had some interest in or hold upon the property sold. *Peck* v. *Chambers,* 44 W. Va. 204; *Newcomb* v. *Brooks,* 16 W. Va. 32.

*Capehart* v. *Dowery,* seems to assert, by way of dictum, that an error in the decree of sale may be carried into the decree of confirmation so as to vitiate it and destroy the purchaser's right, by the overruling of objections to confirmation, founded upon the error in the decree of sale. Whether this view is correct, we need not inquire, since the sale was confirmed without objection, and the case just cited declares the title is protected, unless there is objection to the confirmation.

As the decree, though erroneous, must be affirmed, in so far as it orders sale of property, and the property cannot be resold, so as to divide the purchase money into two parts by sale, in the ordinary way, the statute may work inconvenience and embarrassment in the effectuation of restitution which the statute contemplates. The trial court will have to make an apportionment of the proceeds of sale in some other way. Though it may not be able to ascertain the exact amount of money derived from each class of property, it can approximate it by ascertaining the relative values of the two classes.

For the reasons stated, the decree entered in this cause, on the 31st day of May, 1911, in so far as it fixes and determines the rank and priority of the liens of creditors, other than that of Caroline A. Lowther, on the properties mentioned in the bill and proceedings, confirms the commissioner's report as altered and amended by said decree, as to the rank and priorities of said liens, and makes such alterations of said report by its action upon exceptions thereto, will be reversed, and, in all other respects, affirmed. But, on restating the account or in the final decree to be entered, the lien of the Central Banking & Security Company, created by a deed of trust dated May 24, 1906, must be preferred to all others except that of Caroline A. Lowther, since the equitable lien of the appellant will not prevail over a purchaser for value.

The decree of May 13, 1912, in so far as it directs the commissioners having in their hands the purchase money of the property sold, to pay the same out in accordance with

the provisions thereof and of the former orders and decrees in the cause, will be reversed, and in other respects affirmed. Costs in this Court will be decreed to the appellant against all of the appellees except the Central Banking & Security Company, and the cause will be remanded.

*Reversed in part.   Affirmed in part.   Remanded.*